651 P.2d 359

STATE of Arizona, Appellee,

v.

Arnold Ray TUCKER, Appellant.

No. 5270.

Supreme Court of Arizona,
In Banc.

July 28, 1982.
Rehearing Denied Sept. 14, 1982.

See also, 118 Ariz. 76, 574 P.2d 1295.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Stephen J. Rouff, Yuma, for appellant.

GORDON, Vice Chief Justice:

Appellant Arnold Ray Tucker was convicted by a Yuma County jury of one count of first degree murder, one count of armed robbery, and two counts of armed kidnapping—all under our former criminal code. The trial court sentenced him to life imprisonment for the murder and to three concurrent terms of 10 to 30 years on the other charges. Appellant then appealed to this Court. We have jurisdiction pursuant to Ariz.Const. Art. 6, § 5(3) and A.R.S. § 13–4031 ((formerly A.R.S. § 13–1711).

Appellant raises a number of issues. We need only consider his speedy trial claim. The convictions are reversed and the charges are dismissed with prejudice.

Appellant was initially tried in 1976. The evidence showed that appellant had the victims come to his residence so that they could buy marijuana from appellant's cofelons. Rather than complete the sale, appellant and his cofelons had planned to rob the victims. After introducing the victims to the cofelons, appellant apparently left the scene. Appellant's cofelons then robbed and kidnapped both victims and drove away from the residence. During the flight from the robbery scene, one victim was killed and the other narrowly escaped. Although there was evidence that appellant had no knowledge that a murder would occur, he was equally culpable with the other cofelons of felony murder (former A.R.S. § 13–452) because he aided and abetted (former A.R.S. §§ 13–139, –140) the robbery.

Appellant's original convictions were affirmed by this Court with two justices dissenting (one joining the dissent only in part). *State v. Tucker,* 118 Ariz. 76, 574 P.2d 1295 (1978), *cert. denied,* 439 U.S. 846, 99 S.Ct. 144, 58 L.Ed.2d 147. Appellant thereafter sought habeas corpus relief in the federal courts. The Federal District Court of Arizona, adopting the dissenting opinion in the state case, granted the requested habeas corpus relief. *Tucker v. Raines,* No. Civ. 79–455 PHX–WPC (D.Ariz., order filed July 16, 1979). The district court ordered the state to retry appellant within 60 days or else release him from custody pending retrial. The order was stayed pending an appeal to the Ninth Circuit.

On appeal, the Ninth Circuit affirmed the district court. *Tucker v. Raines,* 626 F.2d 867 (9th Cir., 1980). When the Ninth Circuit's opinion was filed, the clerk of the court sent the following notice to defense counsel and the Arizona Attorney General (who was representing the state in the federal court proceedings):

"NOTICE OF ENTRY OF JUDGMENT

"*Judgment was entered in this case as of the file stamp date on the attached decision of the court.*

      \*     \*     \*     \*     \*     \*

"Issuance of the Mandate (FRAP 41)

"The mandate is the certified copy of the judgment. The mandate is scheduled to be issued 21 days from the entry of judgment unless the court directs otherwise. A *timely* petition for rehearing will stay the issuance of the mandate. If the petition is denied, the mandate will be entered 7 days later. \* \* \* "

(Emphasis in original.) The state took no further action, and the judgment/mandate was entered on August 18, 1980 per the rule explained in the notice.

When defense counsel received notice of the Ninth Circuit's decision, he wrote a letter to the assistant attorney general handling the case and demanded a new trial or release of his client as previously ordered by the district court. Defense counsel sent a copy of this letter to the Yuma County Attorney. Believing that a separate document entitled "mandate" would be, but had

not yet, been filed by the Ninth Circuit, the assistant attorney general advised the Yuma County Attorney to take no action on appellant's demand until a mandate was received. The state never sent appellant a response to the letter.

When the instant case returned to the Yuma County Superior Court, the state had 60 days from the entry of the judgment/mandate to retry appellant or release him by virtue of the federal district court's order. Further, appellant argued that Ariz. R.Crim.P. 8.2(d) required a retrial within 60 days of the date when the state received the Ninth Circuit's judgment/mandate— August 26, 1980. Thus, appellant's trial should have commenced or he should have been released by October 17, 1980 under the federal order. Rule 8.2(d), if applicable, required a trial by October 27, 1980.[1] The state made no attempt to schedule appellant's trial during this interval until appellant filed in state superior court a motion to dismiss the prosecution after the 60 days of the federal order expired. At the same time, appellant moved in federal district court to have the state release him.

The state opposed both motions and requested that a trial date be set by the superior court. The hearing in superior court took place on October 27, 1980. Appellant's motion to dismiss was denied and a trial was set for November 18, 1980, as the court found justification for the state's delay. Ariz.R.Crim.P. 8.2(d) requires a retrial within 60 days after the "service of the mandate." The deputy county attorney prosecuting appellant stated that he never received a mandate from the federal courts or the Attorney General. The trial court held that the confusion caused by the interface of the federal and state rules and the Attorney General's office and Yuma County Attorney's office excused the neglect in scheduling a retrial.

On November 3, 1980, the federal district court denied the state an extension of time to comply with its retry or release order and ordered that appellant be released

pending retrial. The parties appeared again in superior court on November 5, 1980 to enforce the federal court's order. At the hearing, the deputy county attorney "requested" the court to dismiss the prosecution without prejudice to avoid the speedy trial limits of Rule 8.2(d). When the court asked if the state was moving for a dismissal without prejudice, the prosecutor correctly replied that the state could not make such a motion due to Rules 8.6 and 16.5(a). The prosecutor then stated that he was merely "submitting" the matter to the court for its consideration. Over appellant's vigorous objections and pursuant to Rule 8.6, the court dismissed the case and did so without prejudice by finding that the state's delay was justified. The court also ordered that the appellant be released forthwith.

While appellant was being processed out of jail, the state filed a new case (the instant case) charging the same offenses as in the original prosecution. Before appellant could be released from jail, he was arrested and held pending trial of the new case. The filing of the new case apparently also gave the state 90 days from the new arraignment to try appellant. Rule 8.2(b).

Appellant finally went to trial on February 11, 1981 and was convicted. The speedy trial issue is now before us on appeal from appellant's conviction. At the outset, the state argues that appellant has waived his right to raise the speedy trial issue. It argues that appellant should have brought a special action sometime before the new trial started so that there would not be an unnecessary trial. Although we agree that a special action on speedy trial issues promotes judicial economy, we do not believe appellant waived any rights. First, this Court has often considered speedy trial arguments on appeal and has never required that they be brought by way of special action. Second, appellant's failure to bring a special action may be attributed in part to the statements of the state's representative. When appellant appealed the dismissal of

1. October 25, 1980, which was 60 days after August 26, 1980, fell on a Saturday. October

27 was the first day after that on which a trial could be held.

the original case without prejudice, the state moved for dismissal of the appeal arguing in part that "appellant is free to raise his challenges after judgment and sentence in a timely filed Opening Brief." The state's motion to dismiss the appeal was thereafter granted.[2] These facts do not support a finding of waiver.

■ We must first determine what speedy trial rule applies to appellant's original case. The parties and the trial court assumed that the speedy trial time limits of Ariz.R.Crim.P. 8.2(d) would apply. Rule 8.2(d) requires a retrial within 60 days of the service of the mandate when a defendant's conviction is reversed on appeal in the state courts. Rule 8.2 is not explicit as to the time period within which a retrial must be had when a defendant is granted habeas corpus relief in federal court, however. We hold that the parties were correct in assuming that Rule 8.2(d) applies in such cases. The state's position after a federal court grants a state prisoner habeas corpus relief is analogous to the state's position after a state court reverses a defendant's convictions. In both situations, the state has investigated, assembled, and tried the case once, and it need only reassemble its evidence. Furthermore, a defendant who must go to federal court to have a faulty conviction declared invalid should be entitled to no less speedy trial protection than a defendant who finds relief in the state courts. Therefore, Rule 8.2(d) gives a defendant granted federal habeas corpus relief the right to be retried within 60 days after the federal mandate is served.[3]

■ We next turn to whether there was a speedy trial violation under Rule 8.2(d). Rule 8.2(d) requires a retrial after reversal of a conviction within 60 days from "service of the mandate" from the appropriate court. The Notice of Entry of Judgment sent by the Ninth Circuit after its affirmance of the district court could not be clearer in its discussion of the mandate. The certified copy of the judgment would be the mandate, and the judgment/mandate would be filed 21 days from the entry of judgment. The mandate was indeed so filed on August 18, 1980 and the Attorney General was served the mandate on August 26, 1980. For purposes of the present case,[4] this service made October 27, 1980 the last day for appellant's trial to commence. Any confusion the state argues it had might have been alleviated had it responded to appellant's letter requesting a timely trial.

Because the trial did not commence by October 27, 1980 (and indeed was not scheduled for November 18, 1980 until a hearing was held on October 27), appellant's speedy trial rights under Rule 8.2 were violated. Having found such a violation, we now must decide whether dismissal of the charges should have been with prejudice. *See* Rule 8.6.

■ Rule 8.6 gives no guidelines to determine whether a dismissal should be with or without prejudice. When dealing with the allegation of a denial of the Sixth Amendment right to a speedy trial, the court must consider the length of the delay, whether the defendant has demanded a speedy trial, the reason for the delay, and the prejudice to the defendant. *Barker v.*

2. The trial court's dismissal of the original case without prejudice was not an appealable order under A.R.S. § 13–4033.

3. The practical problem with such a rule is illuminated in the instant case. In the Arizona court system, the appellate court always sends a mandate to the clerk of the relevant superior court. The Ninth Circuit's certified copy of judgment was its mandate, however, and this judgment/mandate was not sent to the state courts. A court cannot comply with its duty to schedule a defendant's trial if it is unaware that the defendant should be tried. It appears in the present case that defense counsel may have informally sent copies of the federal orders and judgments to the Yuma County Superior Court. In the future, we suggest that either the prosecution or the defense serve upon the clerk of the appropriate superior court a certified copy of any federal judgment or mandate affecting a case in the superior court. Nevertheless, the state in the present case has never argued that the speedy trial limits did not begin running when it received a copy of the Ninth Circuit's judgment/mandate.

4. See note 3, *supra.*

*Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Rule 8 speedy trial right is more restrictive of the state than the Sixth Amendment and does not require the analysis espoused by *Barker. See State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 529 P.2d 686 (1974). In fact, the unspecified length of delay necessary to a Sixth Amendment violation under *Barker* is superseded in Arizona by the narrowly drawn time limits enumerated in Rule 8.2. Further, Rule 8 generally does not require the defendant to make any demand to preserve the speedy trial right. *Rojas v. Superior Court,* 100 Ariz. 364, 414 P.2d 740 (1966); *State v. Lee,* 25 Ariz.App. 220, 542 P.2d 413 (1975).[5] Nevertheless, the other two prongs of the *Barker* analysis—the reason for the delay and the prejudice to the accused—are helpful guidelines in deciding whether a dismissal on speedy trial grounds should be with or without prejudice.

The state argued before the trial court that its neglect in retrying appellant was excusable. The argument is that there was confusion over when the Rule 8.2 time limits would begin due to a misunderstanding as to the effect of the certified copy of the judgment/mandate. The Attorney General received the mandate but was not the prosecutor for retrial. The Yuma County Attorney was the prosecutor for retrial but never received the mandate. The Yuma County Attorney was never told that the mandate had been received because the Attorney General's office never realized that the mandate had been served.

We understand how such a mix-up can occur when one office of the state is handling trials and another office of the state is handling appeals and post-conviction petitions. Nevertheless, for purposes of guaranteeing a criminal defendant's rights, the state and all its offices must be considered a single entity. Communication between the Attorney General and Yuma County Attorney must be a problem for those offices and not a problem for appellant. Therefore, the Yuma County Attorney is charged with service of the mandate on August 26, 1980.

---

**5.** These cases were modified by Rule 8.1(d) which became effective on August 1, 1975. That rule states:

> "The defendant's counsel shall advise the court of the impending expiration of time limits in the defendant's case. Failure to do so may result in sanctions and should be considered in determining whether to dismiss an action pursuant to Rule 8.6."

The official comment declares that the rule was added "in light of *State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 529 P.2d 686 (197[4])) to equalize the burden of speedy trial compliance between the defense and the prosecution."

In *State ex rel. Berger,* a long series of motions and hearings intervened between the date of arrest and the eventual trial date. An important issue on appeal was whether the delays caused by these interruptions should have been excluded under Rule 8.4. This Court concluded that some of the delays were nonexcluded time and that the defendants' speedy trial rights had been denied. We stated that it is the prosecutor who has the main duty to insure a speedy trial but held that when the trial court is the cause of noncompliance with the Rule 8.2 time limits, a dismissal may be without prejudice.

We believe Rule 8.1(d) was meant to apply only in cases similar to *State ex rel. Berger, i.e.,* when a pretrial motion or hearing causes a trial to occur later than expiration of the original Rule 8.2 time limit. In such cases, there will always be an issue as to whether the delay was an excluded or nonexcluded period under Rule 8.4. The accused may not lie poised until the Rule 8.2 limit runs and then pounce with a claim of denial of a speedy trial because the delay was nonexcluded time. The prosecution and defense both have a duty to request resolution of the Rule 8.4 issue before a speedy trial violation occurs.

But when there are no intervening delays between the event that triggers Rule 8.2 and the expiration of the Rule 8.2 time limit, the accused need not demand compliance with the time limits. Unlike the Sixth Amendment wherein the time limit for a speedy trial is unspecified, Rule 8.2 is quite explicit about the time within which an accused must be brought to trial. If nothing interferes with the running of the Rule 8.2 period, the accused should not need to visit the courthouse every so often to remind the court to check the countdown.

Thus, Rule 8.1(d) is inapplicable in the instant case because no delay occurred between the service of the federal mandate on the state and expiration of the Rule 8.2(d) 60 day time limit. Moreover, we note that although appellant never made any demands on the court for a speedy trial, he did make such a demand by letter to the Attorney General and Yuma County Attorney. Also, the state has not argued at any stage that Rule 8.1(d) should operate in this case to preclude a dismissal with prejudice.

The state's neglect in not setting trial within 60 days thereafter is not justified.

Appellant was also prejudiced by the state's actions. Whatever the motives, the state's conduct resulted in subversion of the federal court's order to retry appellant within 60 days of a final decision in the case or release him pending retrial. By the time the 60 days expired, the state had not scheduled a retrial, had not released appellant, and had not answered his letter requesting a timely retrial. When on October 27 the state finally requested a date for a new trial, the trial was set for November 18 and appellant was still not released.

Appellant had to return to federal court where on November 3 he obtained an order for his release. Appellant then had to bring this order back to superior court on November 5 to obtain his release. At this time, the state deftly maneuvered to keep appellant in custody. The state dodged Ariz.R.Crim.P. 16.5(a)'s prohibition of the prosecutor moving for a dismissal "to avoid the provisions of Rule 8" by submitting the matter and the state's recommendation to the court for action on the court's own motion. When the court then decided to dismiss without prejudice on "its own initiative" under Rule 8.6, the state achieved in substance what Rule 16.5(a) precludes. The state circumvented the federal court's release order by then filing a new case and detaining appellant pursuant to those charges before he could be released. We cannot condone such gamesmanship within the letter but not the spirit of the law.

The result of the state's conduct was to subvert appellant's right to a speedy trial to keep him in custody. One of the primary purposes of the right to a speedy trial is to "minimize the possibility of lengthy incarceration prior to trial." *United States v. MacDonald,* —— U.S. ——, ——, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704 (1982). Delayed pretrial incarceration of a defendant, "wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty * * * [and] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" *Moore v. Arizona,* 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183, 186 (1973) (quoting *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Thus, the appellant's continued pretrial incarceration prejudiced him.

It is with great consternation that we reverse a criminal conviction of such a serious nature solely because the state dallied too long in bringing appellant to trial. But the state's violation of appellant's right to a speedy trial was not minor. If we are to preserve the efficacy of the right to a speedy trial in Arizona, we must reverse the conviction and dismiss the prosecution with prejudice when presented with facts such as those in the instant case.

The conviction is reversed; the case is remanded to the superior court with instructions to dismiss the prosecution with prejudice.

CAMERON and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, dissenting:

The court today reverses a murder conviction and orders the prosecution dismissed with prejudice because of a violation of the "speedy trial" rules. The court's action is all the more distressing because the application of the time limits in this case does not appear to be required by the Criminal Rules.

The Rules of Criminal Procedure are intended to apply to criminal proceedings before all Arizona courts. *See* comment to Rule 1.1, Rules of Criminal Procedure, 17 A.R.S. With this principle in mind, it should follow that the time limits of Rule 8.2(d) concerning reversal of a judgment by an appellate court applies to action by an Arizona appellate court. In the case at issue, a retrial of appellant was ordered by a federal district court, which decision was affirmed by a federal appellate court. Under the circumstances of this case, the provisions of Rule 8.2(d) are not applicable.

Under federal habeas corpus proceedings, which is a collateral attack on a state court

judgment, the federal courts devise the remedy to protect the constitutional rights of the prisoner. The supremacy clause of the United States Constitution makes the judgment of the federal courts binding on the state courts. Necessarily, the procedural rules of a state system may not interfere with or limit the action of a federal court. The application of Arizona's "speedy trial" rules may not limit the power of the federal courts to fashion a remedy for the state prisoner.

The federal courts have applied their own time limits in federal habeas corpus proceedings, and the sanction or relief is the release of the state prisoner. The case at issue should have been governed by the conditions set down by the federal court, but this court, for the first time, declares that Rule 8.2(d) applies to federal proceedings. This case involves action by a federal appellate court; does Rule 8.2(d) also apply to similar action by a federal district court when there is no appeal of the ruling to a federal appellate court?

The mixing of federal and state procedures has succeeded in confusing an already chaotic condition in our criminal law. There is no need for such confusion. This court should leave the enforcement of the time limits within which retrial is to occur in collateral federal proceedings to the federal courts. Rule 8.2(d) should apply solely to proceedings within the state court system.

HAYS, Justice (dissenting):

I concur in the dissent of Chief Justice Holohan.