706 P.2d 1240

**The STATE of Arizona, Appellant,**

v.

**Cornelius HANGER, Gus Gillespie, Sherdic Williams, Otis Charles Thompson, Robert Lee Luckett and Ricky Lamar, Appellees.**

**No. 2 CA–CR 3499.**

Court of Appeals of Arizona, Division 2, Department B.

June 21, 1985.

Review Denied Sept. 17, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Stanley L. Patchell and Galen H. Wilkes, Phoenix, for appellant.

Michael J. Bloom, Tucson, for appellees Hanger, Luckett, Thompson and Lamar.

Armand Salese, Tucson, for appellees Williams and Gillespie.

## OPINION

LIVERMORE, Judge.

Stripped of the rhetoric and invective with which the appellate briefs are filled, the narrow issue in this case is whether the trial judge abused his discretion by dismissing criminal charges with prejudice when, during jury selection of what was anticipated to be a three- to four-month trial, Cochise County announced that it did not intend to pay any furhter defense costs and fees as due or for the foreseeable future.

The state does not contest the power of the trial judge to dismiss. *State v. Fendler,* 127 Ariz. 458, 622 P.2d 17 (App.1980); *State v. Hannah,* 118 Ariz. 610, 578 P.2d 1039 (App.1978). Its argument, rather, is that such power cannot be exercised for the reasons stated in this case. First, it suggests that the lawyers should have been ordered to serve without compensation. Second, it argues that under Rule 6.7, Rules of Criminal Procedure, 17 A.R.S., lawyers are not entitled to compensation until the case is completed and that, therefore, dismissal for failure to make periodic payments is prohibited. Finally, it is contended that the trial court abused its discretion by not ordering Cochise County to pay rather than dismissing the prosecutions.

■ We begin with that which is incontestable; Cochise County was obligated by A.R.S. §§ 13–4011, 13–4013 to pay the costs and fees of the defense. Its refusal to perform that obligation presented the trial judge with a difficult problem. While he had the power to order payment, *Alexander v. Deddens,* 106 Ariz. 172, 472 P.2d 41 (1970), the position of the county was that it had no money with which to fulfill its statutory obligation and at the same time meet other pressing county needs. Given that position, it was not unfair for the trial judge to assume that a judicial order would be no more availing than a statutory mandate. Neither was it unfair for him to avoid mediating among various calls on the county purse. To forego one possible remedy in these circumstances is not an abuse of discretion. We decline to mandate confrontations between the court and other governmental agencies. Similarly, assuming that a trial judge could order lawyers to serve without compensation, it is not an abuse of discretion not to enter such an order where the statutes plainly provide for payment. Finally, while Rule 6.7 contemplates in the ordinary criminal case that payment will be made after the trial is over, it does not forbid a judicial order for periodic payments when the magnitude of the case so dictates. In any event, the County had anticipatorily repudiated its obligation to pay when the trial was over.

■ While the technical arguments advanced by the state are not persuasive, we must respond to the intimation that the trial judge thwarted the public's interest in resolution of the charges against the defendants. It was not the judge that thwarted resolution of the case. Rather, it

was the state. The state is constitutionally obligated to fund defense services. It has chosen to fulfill that obligation by imposing it on counties within the state. Such devolution does not, however, end responsibility. The state cannot disclaim its constitutional obligation. That stricture applies with particular force on the facts of this case where the state legislature voted against a special appropriation to cover defense fees and costs.

■ Having determined that dismissal was not forbidden, we must assess whether the trial judge abused his discretion in finding that the interests of justice required that such dismissal be with prejudice. The state emphasizes in its argument that at the time of dismissal the defendants could establish no prejudice, and that in the absence of such prejudice, *State v. Hannah*, supra, requires that the dismissal be without prejudice. Ordinarily, we would agree. In this case, however, the trial judge could foresee with certainty a violation of the speedy trial requirements of Rule 8, Rules of Criminal Procedure, 17 A.R.S. Had he continued the case, rather than dismissed it, the time limits of that rule would have passed long before Cochise County was prepared to provide defense services. In these circumstances, where the state or its agencies have failed to fulfill statutory and constitutional obligations, a dismissal under Rule 8 would be with prejudice. *State v. Tucker*, 133 Ariz. 304, 651 P.2d 359 (1982). Given the contumacy of Cochise County, as the state's agent, to provide counsel to the defendants, and the resultant certainty of a Rule 8 violation, the trial judge could, in the exercise of his discretion, find that "the interests of justice" required that the dismissal be with prejudice under Rule 16.5, Rules of Criminal Procedure, 17 A.R.S.

■ We regret the result in this case. We recognize that extraordinarily complicated cases, such as this one, can severely strain resources in rural counties. We can understand, if not approve, Cochise County's decision that other county needs had to take precedence over the provision of defense services in this case. We also understand the trial judge's decision to defer to the judgment of the county on the utilization of county resources. The state can avoid the result in this case in future cases by utilizing state funds to pay defense costs or by providing a state public defender to handle those cases beyond the means of rural counties to fund.

The order appealed from is affirmed.

LACAGNINA, J., concurs.

HATHAWAY, Judge, dissenting.

Dismissal with prejudice of this criminal prosecution was, in my view, inappropriate and a clear abuse of judicial discretion. It was precipitated by the Board of Supervisors' refusal, in violation of A.R.S. § 13–4013, to allocate additional funds to meet the attorneys' fees and costs of these indigent criminal defendants, albeit the court found funds were available. I believe the court abdicated its judicial responsibility and tossed the reins of the administration of criminal justice to the Board of Supervisors.

Dismissal of a criminal prosecution is an extreme measure which should not be ordered absent a showing of good cause. *State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979). Good cause exists where a defendant suffers actual prejudice as a result of the action or inaction of the prosecutor. See *State v. Tucker*, 133 Ariz. 304, 651 P.2d 359 (1982) (speedy trial violation); *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984) (intentional prosecutorial misconduct). The focal question in this case is whether dismissal of the prosecution is permissible where prejudice is anticipated rather than realized, where such prejudice can be avoided by other, less drastic remedial measures, and where such prejudice is caused not by the prosecution but by the county's refusal to further fund the defense.

Clearly, indigent defendants are entitled to counsel, and the legislature has just as clearly mandated that counsel appointed by the court "shall be paid by the County ...

such amount as the court deems reasonable, considering the services performed." A.R.S. § 13–4013. It is likely that the defendants' rights would have been prejudiced by requiring counsel and its support staff to serve without compensation through lengthy trials. It must be noted, however, that over $225,000 had already been expended by the county for the defense and that as of the date of dismissal payments were essentially current. The trial court found that Cochise County had funds available to it for the payment of the indigent fees. Therefore, the trial court could have, and in my view should have, ordered payment of such fees in due course as it found reasonable and necessary. Precedent for such a course is found in *Alexander v. Deddens*, 106 Ariz. 172, 472 P.2d 41 (1970), where our supreme court held that the trial court may properly order payment of such fees by the county. The court concluded, "[i]f, however, the Board of Supervisors or any other such body attempts to interfere with the discretion of the court in awarding counsel's fees, then the court has the power to order the treasurer to make payment." 106 Ariz. at 173, 472 P.2d at 42. Ordering payment would have served the public interest in an unimpeded operation of the criminal justice system, a paramount duty of government. Ironically, the trial court recognized that interest when it explained in its decision to dismiss:

> "This case is a case that should have been tried. There's no question that this case should have been tried. The public has a right and an absolute right to have known what occurred in Cochise County during the two to three years that the Christ Miracle Valley Healing Church moved to Cochise County."

The background of the case supports that observation. The prosecution arose from a violent confrontation on October 23, 1982, in Miracle Valley, Cochise County, between a contingent of Cochise County sheriff deputies and a large number of black members of a religious sect. The deputies were attempting to serve arrest warrants on a sect member when the confrontation deteriorated into a bloody melee. Injuries were sustained on both sides and two church members were shot.

Indictments were returned, charging sixteen counts of assault with a deadly weapon, three counts of disturbing the peace, three counts of reckless use of force, two counts of carrying a deadly weapon, and one count of possession of a prohibited weapon. With these indictments, the county attorney had the duty to carry forward the prosecution under A.R.S. § 11–532(A)(1), and the board of supervisors was required to see that the county attorney faithfully performed the duties of office in accordance with A.R.S. § 11–251.

As noted above, in excess of $225,000 in public funds had been expended by the county towards defense attorneys' fees and supporting staff. The case was prepared to go to trial, and, indeed, was at the eve of trial when the dismissal was entered. The option to continue was available to the trial court and could have been exercised without actual prejudice to defendants. The court should not permit the administration of criminal justice to be wrenched from a neutral, dispassionate judicial discretion and be placed hostage in the unseemly arena of competing interests striving for funds. The dismissal with prejudice prevents the resolution of serious criminal charges on the merits to the detriment of the administration of criminal justice and, as the state points out, creates the risk of a new theory of defense—"outspend the budget and walk." There is no evidence to support a finding that the defense counsel so acted in this case. But trial judges should exercise control to see that the risk created by the majority opinion does not eventuate.

Beyond the impact on the immediate parties, the holding of the majority portends far-reaching and pernicious consequences for the distribution of powers among the several branches of government. First, it undermines the authority and duty which is conferred by our constitution and laws upon the county attorney to prosecute

where there is probable cause to believe a criminal offense has been committed. The county boards of supervisors may be encouraged to preclude controversial, unpopular, or embarrassing prosecutions simply by refusing to fund the defense. Second, the broader message of the majority's holding is that a county may escape other statutorily mandated obligations by similarly refusing to appropriate the necessary moneys to pay for those obligations. What the state legislature has mandated—in this case, payment of indigent defense fees—the courts have the power to enforce. The holding of the majority undermines this fundamental principle by placing its imprimatur upon the trial court's refusal to fulfill its responsibility in our democratic system of checks and balances. Although a budgetary expense may have been spared, criminal justice is poorer, as are we all.

I would reverse and direct that the order of dismissal be vacated.