NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DENNIS LEE UPTAIN, *Appellant*.

No. 1 CA-CR 17-0020
FILED 3-6-18

Appeal from the Superior Court in Maricopa County
No. CR2015-133116-001
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Dennis Lee Uptain appeals the superior court's denial of his request for disclosure of various police officers' "background information." For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**[1]

¶2        On an evening in July 2015, Tempe Police Officers Dunn and Torres were on bike patrol. Uptain, walking in the bike lane, approached the officers yelling about how he needed to speak with them. Uptain made complaints about his past interactions with police officers, but told Dunn and Torres there was nothing they could do for him. Torres repeatedly asked Uptain not to walk in the bike lane, as it was a lane of traffic. Uptain walked away, continuing to yell and remaining in the bike lane for approximately a block and a half.

¶3        The officers decided to issue Uptain a citation and approached him, but Uptain began entering lanes of traffic, forcing at least one vehicle to apply its brakes. Both officers repeatedly asked Uptain to step back onto the curb, but Uptain refused to comply and remained in either the lane of traffic or the bike lane. Uptain then took an "aggressive stance" toward the officers, "similar to . . . a boxer stance with a strong foot forward and both hands clenched in a fist." Officer Dunn retrieved his taser from his vest as Officer Torres approached Uptain from the rear in an attempt to detain him. Officer Torres first employed a wrist-lock maneuver to gain control of Uptain; when that failed, Officer Torres attempted a seat-belt technique, grabbing hold of Uptain's upper body. That maneuver also failed to subdue Uptain, who spun away from Officer Torres, leading them both further into the lanes of oncoming traffic.

---

[1] "We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts." *State v. Miles*, 211 Ariz. 475, 476, ¶ 2 (App. 2005).

¶4        At that point, Officer Dunn deployed his Taser, causing Uptain to drop to his backside in a seated position. Standing over him, Officer Torres repeatedly told Uptain to roll over and place his hands behind his back. Uptain did not comply with the order and instead swung his closed fists up at Officer Torres, grabbed his vest, and attempted to pull him down to the ground. Officer Torres punched Uptain in the face twice, and then backed away. Officer Torres again instructed Uptain to roll over and place his hand behind his back, and this time Uptain complied. Officers Dunn and Torres handcuffed Uptain and moved him out of the lanes of traffic and onto the sidewalk as more officers arrived at the scene. Officer Torres stepped away but Uptain continued to yell at him, challenging him to a fight and threatening to sue him.

¶5        Uptain was indicted with one count of aggravated assault against a peace officer, a class 5 felony. Uptain moved for and was granted permission to proceed *pro per*. After a trial, the jury found Uptain guilty as charged, and the court sentenced him to 2.25 years of imprisonment.

## DISCUSSION

¶6        Uptain argues the superior court abused its discretion when it denied his "repeated requests for disclosure" of "background information on the three officers associated with his arrest" pursuant to *Brady v. Maryland*. 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). We disagree.

¶7        A trial court is in the best position to rule on discovery requests and has broad discretion in so doing. *State v. Fields*, 196 Ariz. 580, 582, ¶ 4 (App. 1999). Therefore, "we will not disturb its rulings on those matters absent an abuse of that discretion." *Id.* (citation omitted). A trial court "abuses its discretion when it misapplies the law or predicates its decision upon irrational bases." *Id.* (citation omitted). To the extent a defendant sets forth a constitutional claim in which he asserts the withheld information is necessary to his defense, we conduct a de novo review. *State v. Connor*, 215 Ariz. 553, 557, ¶ 6 (App. 2007).

¶8        Before trial, Uptain filed a "Motion for a Brady Report on the Tempe Police Department" requesting a "full Brady report on [the] Tempe Police Department." The trial court denied the motion, explaining, "I am going to deny that, because I don't find that getting a Brady report on every Tempe police officer is appropriate. It's overbreadth. I mean, it's not

focused on your case. There's not specific enough information for me to actually take action. So I'm denying it at this time."

¶9 Uptain then filed a "Motion for [a] Brady Report on Officers," requesting a *Brady* report on "Tempe Police officers Matt Torres, [O]fficer Dunn, and [O]fficer Molinas" and "all officers that have police reports filed in this case," including a detective who had been involved in the grand jury proceedings. The trial court again denied Uptain's motion, explaining:

> If you have something that you believe the State has acted inappropriately regarding a Brady disclosure, you can bring that to the Court's attention. Other than that, they have an ethical duty to disclose what is appropriate under the rules.
>
> . . .
>
> But just a blanket motion for the Brady report, does not comply with current case law.

Uptain replied that "that's fine, Your Honor," and the prosecutor then affirmed the State had no such information.

¶10 Uptain filed a motion for reconsideration on his *Brady*-report requests, claiming he had been denied access to public records necessary for him to "prov[e] character" and show "habit [and] [r]outine practice" of the involved police officers and detective. Uptain demanded "all public records of" six officers, asking for "[copies] of these [officers'] full career files to show, habit, [r]outine practice, in charging the public with [aggravated] charges while having the [prosecutor] and county attorney turning a blind eye to [allegations] made against officers with questionable character, and credibility." The trial court denied the motion for reconsideration, explaining: "The State's avowal was that there is not [a] Brady report on any of these officers that is disclosable. . . . I understand that you believe there is something out there, but if the State doesn't say they have anything, then there's nothing to disclose. . . . It really sounds like what you're asking for is their personnel employment file. That is a different matter than a Brady report."

¶11 At trial, Uptain asked Detective Dunn if he had "numerous complaints against [him] filed by citizens." Detective Dunn responded, "No, I don't have many complaints against me." Uptain then asked Detective Dunn if, during a previous interview, Detective Dunn had told Uptain he had "numerous complaints filed against [him.]" Detective Dunn replied that he did not recall. On redirect examination, the State asked

Detective Dunn if he had talked about having "some complaints" against him in that interview, and Detective Dunn responded that he had. Detective Dunn then confirmed that none of those complaints "involve[d] an accusation of dishonesty on the job" and that officers get complaints from citizens "[a]ll the time." Also during trial, Uptain asked Officer Torres if he had "any findings of any type of excessive force or unnecessary force on your background records," to which Officer Torres replied in the negative.

¶12        Uptain now claims that, if Detective Dunn was "in the habit of using force or provoking fights with citizens," that information would have been useful for impeachment purposes. "However, that information was [not] available because none of the officers' disciplinary or complaint histories were made available here." He further contends that he "lacked information vital to impeaching these officer[s'] credibility and pursuing his theory that the officers accosted him and began the confrontation."

¶13        Under the United States Constitution, the prosecution has a due-process obligation to disclose exculpatory evidence that is material to the issue of guilt or punishment. *State v. Tucker*, 157 Ariz. 433, 438 (1988) (citing *Brady*, 373 U.S. 83; *U.S. v. Bagley*, 473 U.S. 667, 676-84 (1985)); *see also* Ariz. R. Crim. P. 15.1(b)(8) (the State must make available to the defendant "all existing material or information that tends to mitigate or negate the defendant's guilt or would tend to reduce the defendant's punishment"). When a defendant makes a request for the personnel files of a testifying officer, however, Arizona requires the defendant to make a threshold showing of materiality. *State v. Robles*, 182 Ariz. 268, 272 (App. 1995). "Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection, much less reversal for a new trial. A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden" upon courts. *State v. Acinelli*, 191 Ariz. 66, 71 (App. 1997) (quoting *U.S. v. Navarro*, 737 F.2d 625, 631 (7th. Cir. 1984)).

¶14        Uptain has made no such showing of materiality, but rather is "effectively requesting a blind fishing expedition among documents possessed by the government." *Acinelli*, 191 Ariz. at 71 (citation omitted). The State repeatedly avowed that it had no *Brady* information on any of the officers, and Uptain presented no evidence suggesting the contrary. *See State v. Montano*, 204 Ariz. 413, 423-24, ¶¶ 47-53 (2003) (prosecutor avowed there was no *Brady* material in sealed documents; court concluded defendant's *Brady* claim failed, in part, because defendant had not shown the sealed documents were in any way exculpatory). Despite Uptain's

conclusory assertion that "[w]hether or not these officers had other complaints whose facts mirrored Mr. Uptain's situation was not speculation, but was directly pertinent to Mr. Uptain's defense," Detective Dunn's admission that he had had "some complaints" filed against him did nothing to establish that the existence of any relevant *Brady* material was more than speculation. Therefore, the trial court did not abuse its discretion in denying Uptain's *Brady*-related discovery requests.

¶15    Furthermore, despite Uptain's assertion that any evidence about complaints against Detective Dunn involving "use of force or allegations of use of excessive force," or "[i]f Det. Dunn was in the habit of using force or provoking fights with citizens, that would have been useful impeachment information," such information may not be used either to impeach a witness or to show the witness acted in conformity with a certain character trait. As this court has explained in *State v. Superior Court In & For Pima County*, when a defendant claims an arresting officer has been "overly aggressive and assaultive, and that in order to adequately prepare the best possible defense, he needed to determine whether there had been substantiated complaints" against the officer involving assaultive conduct, the defendant "would be unable to use this evidence of other bad acts to show that the officers acted in conformity with an aggressive and violent character" under Rule 404(b) of the Arizona Rules of Evidence. 132 Ariz. 374, 376 (App. 1982) (citations omitted). "Nor is such evidence admissible under [Arizona Rules of Evidence 405(b)] as a trait of character which is an essential element of a defense." *Id.* (citation omitted). Further, under Arizona Rule of Evidence 608(b), "assaultive conduct does not involve dishonesty or false statement and therefore could not be used to impeach the credibility of the officers." *Id.* (citations omitted).

## CONCLUSION

¶16    The trial court did not abuse its discretion in denying

Uptain's *Brady*-related discovery requests. For the foregoing reasons, we affirm Uptain's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:          JT