496 P.2d 600

**The STATE of Arizona, Appellant,**

**v.**

**Ashley Allgood PURSE, Jr., Appellee.**

**No. 2 CA–CR 279.**

Court of Appeals of Arizona,
Division 2.

May 4, 1972.

Gary K. Nelson, Atty. Gen., Phoenix, Rose Silver, Pima County Atty., by James M. Howard, Deputy County Atty., Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by Jack Redhair, Tucson, for appellee.

KRUCKER, Chief Judge.

This is an appeal by the State of Arizona from an order suppressing evidence. We will refer to the parties as they appeared in the court below—appellant as State and appellee as defendant.

Defendant was charged with possession of marijuana for sale and was bound over to superior court after a preliminary hearing. An information was filed on the fifth day of October, 1970. A motion to suppress the evidence, based on the transcript of testimony of the preliminary hearing, was heard and granted. This appeal follows.

The facts, taken from the preliminary hearing transcript, are as follows. On April 30, 1970, Sgt. Brown of the Arizona Department of Public Safety, received a call from Agent Grant of U.S. Customs in Nogales. Sgt. Brown was informed by Agent Grant that Phil Miranda (Marinda) and Jeffrey Lee Coats (co-defendant of appellee) had rented a vehicle in Tucson and the vehicle was described. In March, 1970, Sgt. Brown had received a telephone call from Agent Phil Jordan of the Federal Bureau of Narcotics informing him that Phil Marinda had been arrested in California on narcotics and marijuana laws. In January, Agent Jordan had called Sgt. Brown to inform him that Federal Narcotics Agents had contacted Marinda at his Pizza Parlor in Tucson regarding the purchase of 500 kilos of marijuana.

After receiving the call on April 30, Sgt. Brown and Agent Lowe went to Marinda's Pizza Parlor, where they observed the Dodge described by the customs agent as that rented by Marinda and Coats. The car appeared to be much lower than usual in the rear. Sgt. Brown and other agents began surveillance and about two hours later they observed two men walk up to the car and look at something in the trunk. They then saw the car moved to the nearby Enco station and backed into a lube-bay and the door closed. It was getting dark at this time so the agents moved to the rear of the station and observed through a back window. Agents observed two white males (later identified as defendants Coats and Purse) removing burlap bags containing rectangular objects. Sgt. Brown told Agents Kennedy and Robb what he had observed through the window and that he thought that they had probable cause to go further. (In Sgt. Brown's previous experience with narcotics and marijuana he had observed marijuana bricks being transported in similar burlap sacks.) Sgt. Brown and the two agents walked around to the front of the station and met Coats and Purse carrying two large metal boxes together. Sgt. Brown identified himself as a state narcotics agent and asked to look in-side the boxes. Coats and Purse set the boxes down and Coats motioned toward the boxes and said, "Knock yourself out, man." Sgt. Brown interpreted this phrase to indicate affirmative permission. The boxes were opened and 88 kilos of marijuana were discovered. Both Coats and Purse were then arrested for the possession of marijuana for sale.

The question before this court is whether the search was unreasonable in violation of the Fourth Amendment to the Constitution of the United States. The State argues that the search was reasonable as incident to a lawful arrest based upon probable cause or in the alternative that the search was validated by lawful consent.

We find it unnecessary to determine whether probable cause to arrest existed to validate the search since our finding that there was consent is dispositive of the case.

## CONSENT

Appellee argues that State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963) is the law in Arizona and prohibits one person from waiving another's constitutional rights. In *Pina* the State maintained that a search, otherwise unlawful, was validated by the wife's consent for her absent husband for a search of their home. Officers had previously searched pursuant to a warrant and apparently led the wife to believe that they were just renewing the search under the warrant. Our Supreme Court held the better rule to be that "a spouse is not impliedly authorized by reason of the husband-wife relationship to waive the constitutional protection." We find these circumstances distinguishable from those in the case *sub judice*.

We find the circumstances of Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L. Ed.2d 684 (1969) closely analogous to those before us and its reasoning persuasive. In *Frazier* the petitioner objected to the admissions of evidence found in a duffel bag jointly used by petitioner and his cousin. The bag was left with the cousin and in petitioner's absence, his cousin con-

sented to the search. The United States Supreme Court upheld the search as incident to a valid consent and concluded that petitioner had assumed the risk that his cousin might allow someone to look inside.

■ If the consent in *Frazier* was valid in the absence of the petitioner, then *a fortiori,* the consent here by appellant's co-defendant who was helping to carry each of the metal containers, in appellant's presence and without any objection by appellant, is clearly valid. There is no doubt that a defendant may waive his own constitutional right by freely consenting to a search. State v. Pina, supra; Thompson v. State, 41 Ariz. 167, 16 P.2d 727 (1932). When, as here, the item sought to be searched is in the joint possession of two persons and one gives permission for the search and the other stands mute, the search is validated by the consent and the evidence found may be used against both of the joint possessors.

The order suppressing the evidence is vacated.

HATHAWAY and HOWARD, JJ., concur.