986 P.2d 232

**STATE of Arizona, Appellee,**

v.

**Jose Martin FLORES and Rufino Pineda Perez, Appellants.**

**Nos. 1 CA–CR 98–0028, 1 CA–CR 98–0029.**

Court of Appeals of Arizona, Division 1, Department C.

March 11, 1999.

As Amended March 17, 1999.

Review Denied Sept. 21, 1999.

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section John Pressley Todd, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Benjamin S. Cole, Holbrook, Attorney for Jose Martin Flores.

Keith A. Hammond, P.C. by Keith A. Hammond, Flagstaff, Attorney for Rufino Pineda Perez.

## OPINION

EHRLICH, Judge.

¶ 1 Jose Martin Flores and Rufino Pineda Perez appeal their convictions and sentences for transportation of more than two pounds of marijuana for sale, possession of more than four pounds of marijuana for sale and possession of drug paraphernalia. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 On September 27, 1996, Arizona Department of Public Safety ("DPS") Officer Christopher Hemmen and a Winslow, Arizona, police officer who was riding with Hemmen, C.G. Nelson, saw an eastbound Chevrolet Blazer cross the solid white "fog line" into the emergency lane three times. Thinking that the driver might be intoxicated or falling asleep, Hemmen initiated a traffic stop. Rufino Pineda Perez was the driver, and Jose Martin Flores was the passenger. While Perez explained that the weaving was due to his difficulty managing a truck with large tires,[1] Hemmen was handed the vehicle registration, which showed that Flores was the owner of the truck.

¶ 3 Perez said that he had known Flores for two years and that they were en route from California to Albuquerque to stay for a week, but Flores's story differed from that of Perez. Flores said that he had known Perez for only six months and that they were going to stay in Albuquerque for just two days.

¶ 4 Officer Hemmen issued Perez a warning ticket and told him that he was free to leave. However, as Perez began to walk away, Hemmen inquired whether there were any guns or drugs in the truck. Perez answered no. Hemmen then asked Perez if he would mind if the vehicle were searched, to which Perez again responded no. Perez was

---

1. Perez spoke very little English, necessitating that Hemmen speak with him in Spanish.

given the Spanish-language version of the DPS standard consent-to-search form, which he looked over. When asked by Hemmen if he understood it, Perez said that he did. Perez then signed and dated the form. The form stated that the person signing had been advised of the following rights: (1) to refuse consent, (2) to require that a search warrant be obtained prior to any search, (3) to be informed that, if consent is given, any evidence found can be used against the person in any civil or criminal proceeding, (4) to consult with an attorney before or during the search and (5) to withdraw consent at any time before the search is concluded.

¶ 5 After a requested back-up unit arrived, officers found nothing in the front passenger area of the truck, but the back of the truck contained a large air compressor. Although the compressor looked new, it had a darker-red coloring on the bottom as well as seams that were different on the bottom than on the top. Further, an officer observed paintbrush marks on the bottom of the compressor and a sticker that had been over-sprayed with the darker pigment. The officer also saw what appeared to be blue carpet fibers from the truck stuck to the bottom of the compressor, indicating to him that the compressor had been freshly-painted when loaded into the truck. Additionally, the compressor was unusually heavy, and it did not have the expected hollow sound when the officer tapped it.

¶ 6 A second back-up unit arrived. When asked who owned the compressor, Flores immediately said that it belonged to Perez, and Perez indeed readily acknowledged ownership. Perez added that he had purchased it two days earlier for $400 at Sears and that he was taking it to Albuquerque for his brother.

¶ 7 Believing that the compressor had been altered and probably contained contraband, Officer Hemmen called for a drug-sniffing dog. The dog did not "alert" on the compressor. The officer then asked Flores if he would mind following the officers to the Winslow DPS station ten to 12 miles east, the direction in which Perez and Flores had been traveling, so that they could continue the search in a safer environment. Flores agreed without hesitation and, with Perez, followed the officers into Winslow, thus crossing from Coconino County into Navajo County. One DPS back-up car followed.

¶ 8 At the DPS station, the search continued with a different dog, which alerted on the compressor. The officers then opened the compressor and found 43 taped packages of marijuana weighing a total of approximately 125 pounds. Both men were arrested. Subsequently, their fingerprints were found on the packages.

¶ 9 Flores and Perez were indicted and proceeded to a bench trial in Navajo County. The court denied their motion to suppress the evidence and found them guilty as charged: Count One, transportation of more than two pounds of marijuana for sale, a class 2 felony; Count Two, possession of more than four pounds of marijuana for sale, a class 2 felony; and Count Three, possession of drug paraphernalia, a class 6 felony. Each man was sentenced to concurrent, presumptive terms of five years in prison on Counts One and Two and one year on Count Three.

¶ 10 Both men appealed, and their appeals were consolidated. Ariz. R.Crim. P. 31.4(b). Seven issues have been raised:

1. Whether the driver of the vehicle, Perez, could lawfully consent to its search when the owner, Flores, was present;

2. Whether Perez voluntarily consented to the search;

3. Whether there was an unreasonable detention between the traffic stop and the consent to search;

4. Whether the initial consent continued when the search was moved from the highway to the DPS station and whether the consent was voluntary;

5. Whether the search was within the scope of the consent;

6. Whether Navajo County was the proper venue; and

7. Whether there was ineffective assistance of counsel.

## DISCUSSION

### A. Validity of Driver's Consent to Search of Vehicle in Presence of Owner

¶ 11 As a general rule, a warrant must be obtained to search an area in which an individual has a reasonable expectation of privacy. U.S. CONST., amends. IV and XIV; *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Myers,* 117 Ariz. 79, 89, 570 P.2d 1252, 1262 (1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). An exception to the rule, however, is a search conducted pursuant to a valid consent. *United States v. Matlock,* 415 U.S. 164, 165–66, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth,* 412 U.S. at 222, 93 S.Ct. 2041. The consent may, in certain circumstances, be given by a third party if that individual has the requisite authority, *Illinois v. Rodriguez,* 497 U.S. 177, 186–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Matlock,* 415 U.S. at 170–71, 94 S.Ct. 988, defined as the "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Matlock,* 415 U.S. at 171, 94 S.Ct. 988.

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent ... rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. 988, quoted in *State v. Tucker,* 118 Ariz. 76, 78, 574 P.2d 1295, 1297, *cert. denied,* 439 U.S. 846, 99 S.Ct. 144, 58 L.Ed.2d 147 (1978).

> The test for determining common authority or other sufficient relationship focuses on apparent authority rather than actual authority.... [I]f it reasonably appeared that a third party had common authority over the premises, then the consent to search would be valid.

*State v. Castaneda,* 150 Ariz. 382, 389, 724 P.2d 1, 8 (1986), citing *State v. Girdler,* 138 Ariz. 482, 486, 675 P.2d 1301, 1305 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984); *see Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. 2793. This is a question which we review *de novo. State v. Valenzuela,* 182 Ariz. 632, 632, 898 P.2d 1010, 1010 (App.1995).

¶ 12 There are Arizona cases in which the court has held that a third party has authority to consent to a search. *See, e.g., State v. Jones,* 185 Ariz. 471, 481, 917 P.2d 200, 210 (1996); *Castaneda,* 150 Ariz. at 389, 724 P.2d at 8; *State v. Lucero,* 143 Ariz. 108, 109–10, 692 P.2d 287, 288–90 (1984); *Girdler,* 138 Ariz. at 485–86, 675 P.2d at 1304–05; *State v. McGann,* 132 Ariz. 296, 300–01, 645 P.2d 811, 815–16 (1982); *State v. Schad,* 129 Ariz. 557, 563, 633 P.2d 366, 372 (1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982); *Tucker,* 118 Ariz. at 78, 574 P.2d at 1297; *State v. Fassler,* 108 Ariz. 586, 591, 503 P.2d 807, 812 (1972). But we find no case directly addressing the issue whether an individual who is not the owner may give a valid consent to search a vehicle when the owner is present, although an affirmative answer is suggested in *State v. Purse,* 17 Ariz.App. 174, 176, 496 P.2d 600, 602 (1972).

¶ 13 In *Purse,* the court considered a situation in which a renter of a vehicle was with the defendant, both of whom were removing metal boxes from that vehicle when stopped by law-enforcement officers. The renter permitted a search of the boxes, which revealed marijuana. The trial court suppressed the evidence. On appeal, the court reversed. Invoking *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), it said:

> When, as here, the item sought to be searched is in the joint possession of two persons and one gives permission for the search and the other stands mute, the search is validated by the consent and the evidence found may be used against both of the joint possessors.

*Id.* at 176, 496 P.2d at 602. The court made no distinction between the individual renting

the vehicle and the person accompanying him.

¶ 14 There are a significant number of cases decided by the United States Circuit Courts of Appeals, including that of the Ninth Circuit, in which the court has said that a driver of a vehicle may consent to its search although the owner is present. It is the rationale of these cases we find persuasive. *See, e.g., United States v. Jaras,* 86 F.3d 383, 389 (5th Cir.1996); *United States v. Crain,* 33 F.3d 480, 484 (5th Cir.1994), *cert. denied,* 513 U.S. 1169, 115 S.Ct. 1142, 130 L.Ed.2d 1102 (1995); *United States v. Infante–Ruiz,* 13 F.3d 498, 504 (1st Cir.1994); *United States v. Welch,* 4 F.3d 761 (9th Cir. 1993); *United States v. Eldridge,* 984 F.2d 943, 948 (8th Cir.1993); *United States v. Langston,* 970 F.2d 692, 698 (10th Cir.1992); *United States v. Dunson,* 940 F.2d 989, 994–95 (6th Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Childs,* 944 F.2d 491, 494–95 (9th Cir.1991); *United States v. Dunkley,* 911 F.2d 522, 526 (11th Cir.1990), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 987, 112 L.Ed.2d 1071 (1991); *United States v. Morales,* 861 F.2d 396, 399–401 (3rd Cir.1988); *United States v. Canada,* 527 F.2d 1374, 1378–79 (9th Cir.1975), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976).[2]

¶ 15 In *Morales,* the issue was the validity of a consent to search a rented vehicle given by the driver rather than the lessee, who was the passenger. The court held simply that:

Under the *Matlock* test, a driver of a vehicle has the authority to consent to a search of that vehicle. As the driver, he is the person having immediate possession of and control over the vehicle. As driver, he also has general access to all areas of the vehicle. Therefore, a driver has the requisite "joint access and control" giving rise to the authority to consent to a full search of a vehicle.

861 F.2d at 399 (citations and footnote omitted).

¶ 16 Similarly, in *Welch,* the court held that the government could carry its burden of establishing the efficacy of a third party's consent with "evidence of both shared use *and* joint access to or control over a searched area, which would demonstrate actual authority to consent" or "it may establish consent by means of the 'apparent authority doctrine.'" 4 F.3d at 764 (emphasis original). Thus, a co-defendant "could lawfully give consent to a search of the rental car because he and [the defendant] had joint access to and mutual use of it. By sharing access to and use of the car with [the co-defendant, the defendant] relinquished, in part, her expectation of privacy in the vehicle." *Id.,* citing *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988.

¶ 17 When Flores and Perez were stopped, Perez was driving the truck. Perez thus had immediate possession and control. In fact, he paid for the fuel and some of the other costs for what both men said was something of a joint venture in taking Perez's compressor from California to Albuquerque. Perez also had unfettered access to the open cargo area in which the compressor was located. He accordingly had actual as well as apparent authority to consent to the search, an authority Flores virtually conceded by his failure to object and a risk Flores had assumed in allowing Perez to share possession and access.

### B. Voluntariness of Consent to Search

 ¶ 18 Whether a consent to search has been voluntarily given is a question determined by the totality of the circumstances. *Schneckloth,* 412 U.S. at 226–29, 233, 93 S.Ct. 2041; *State v. Paredes,* 167 Ariz. 609, 612, 810 P.2d 607, 610 (App.1991). The state must establish by clear and positive evidence that a consent to search was freely and intelligently given. *State v. Wilkerson,* 117 Ariz. 143, 144, 571 P.2d 289, 290 (App.1977).

 ¶ 19 Perez, speaking to Officer Hemmen in Spanish, consented to a search of the truck verbally and in writing. When given

2. In several of these cases, the court discusses whether the consent to search the vehicle, if valid, extends to compartments in the vehicle and/or personal effects in which an individual has a greater expectation of privacy such as a purse or a suitcase. The facts of this case do not require that we address those situations.

the Spanish-language consent-to-search form, he neither objected nor told the officer that, as he now asserts, he had trouble reading it. Rather, he appeared to review it, and he signed it. And there is no allegation that he was threatened or coerced in any manner. *See e.g., State v. Acinelli*, 191 Ariz. 66, 70, 952 P.2d 304, 308 (App.1997). We agree with the trial court that Perez's consent was voluntary.

### C. Unlawful Detention

¶ 20 Flores and Perez argue that they were unlawfully detained between the time when they were told that they could leave and the time when Perez was asked whether there were any drugs in the car. We disagree.

¶ 21 At the pertinent time, only Officers Hemmen and Nelson were present. Neither Flores nor Perez was handcuffed. They had been told that they were free to leave, and nothing indicated the contrary. There was no force or show of authority. In similar circumstances, we said in *Acinelli:*

> A reasonable person would have felt free to leave at that point. When [the] officer ... resumed a dialogue with the defendant, he asked permission to search the defendant's car. The defendant agreed orally and in writing. The officer's questions would not have led a reasonable person to conclude that he was compelled by physical force or authority of law to stay.

191 Ariz. at 70, 952 P.2d at 308.

### D. Voluntary Consent to Move Search to Winslow

¶ 22 Flores and Perez challenge the voluntariness of Flores's consent to move from the highway to Winslow, contending that any prior consent to search the vehicle did not continue in effect. They elaborate that the environment was inherently coercive because additional officers had arrived, although neither Perez nor Flores was restrained, and no display of force or authority had occurred. Indeed, neither man claims that the arriving officers did anything other than contribute their presence to the scene, and Perez already had agreed to a search of the vehicle.

¶ 23 Under the totality of the circumstances, there was no coercion. We concur with the trial court that, when Flores agreed to move to Winslow, the consent was voluntary. *See, e.g., Acinelli*, 191 Ariz. at 69, 70, 952 P.2d at 307, 308.

### E. Length and Scope of the Search

¶ 24 Flores and Perez challenge the length and scope of the search, arguing that the length of time, three hours, exceeded the scope of reasonable consent and that the consent was for the truck, not the compressor. They contend that a general consent does not include consent to dismantle a vehicle or its contents.

¶ 25 First, Flores and Perez double the time. The initial traffic stop took approximately 15 minutes, and the initial search took approximately 45 minutes. The second search took approximately 30 minutes, until the second dog alerted on the compressor. Thus, the total time elapsed was approximately 90 minutes. There are no rigid time limits for an investigatory stop, only that it must not last longer than necessary to effectuate its purpose. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

¶ 26 Second, the scope of a consensual search is defined by the scope of the consent given. *Paredes*, 167 Ariz. at 612, 810 P.2d at 610. Perez's consent to search was without limitation, and obviously visible in the open cargo space behind the front seats was the large compressor, a potential container for illegal drugs.

¶ 27 Third, before the compressor was dismantled, the requisite probable cause existed, as the trial court found. *State v. Weinstein*, 190 Ariz. 306, 310–11, 947 P.2d 880, 884–85 (App.1997).

### F. Navajo County as Venue

¶ 28 "Criminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law." ARIZ.REV.STAT. ANN. § 13–109 (1989). Because Flores and Perez con-

206

sented to travel with marijuana from Coconino County into Navajo County, venue was proper in either county.

### G. Ineffective Assistance of Counsel

 ¶ 29 We decline to consider the allegations of ineffective assistance of counsel. Because a resolution of the issues is not possible on the record before us, such contentions must be raised in post-conviction-relief proceedings. *State v. Atwood,* 171 Ariz. 576, 599, 832 P.2d 593, 616 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); *State v. Rodriguez,* 183 Ariz. 331, 332, 903 P.2d 639, 640 (1995).

### CONCLUSION

¶ 30 The convictions and sentences are affirmed.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and CECIL B. PATTERSON, Jr., Judge.