213 P.3d 377

**STATE of Arizona, Appellant,**

v.

**Arturo Vega CARAVEO, Appellee.**

**No. 1 CA–CR 08–0878.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 13, 2009.

Andrew P. Thomas, Maricopa County Attorney By Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender By Peg Green, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

BARKER, Judge.

¶ 1 The State of Arizona appeals from the trial court's order granting Arturo Vega Caraveo's motion to suppress evidence that police officers obtained after conducting a patdown of his person. The State contends that the trial court erred by concluding that *State v. Johnson,* 217 Ariz. 58, 170 P.3d 667 (App. 2007), prohibits a citizen from consenting to a patdown search during a consensual encounter with police officers. For the following reasons, we agree, and, accordingly, reverse the trial court's ruling and remand this matter to the trial court for additional proceedings.

*Facts and Procedural History* [1]

¶ 2 On April 20, 2008, at approximately 5:00 p.m., two officers reportedly observed Caraveo driving and parking a vehicle on the sidewalk in front of a house. After Caraveo exited the vehicle and began walking towards the house, the officers approached him. Based on the encounter, the officers obtained a loaded .380 caliber handgun that had been concealed in Caraveo's rear pants pocket, a jiggle key that Caraveo admitted he used to start the vehicle, and two baggies of methamphetamine located in Caraveo's wallet, which was in his right front pants pocket. Caraveo was subsequently indicted on four counts: (1) theft of means of transportation, a class 3 felony; (2) possession of burglary tools, a class 6 felony; (3) misconduct involving weapons, a class 4 felony; and (4) possession or use of dangerous drugs, a class 4 felony.

¶ 3 On August 21, 2008, Caraveo filed a motion to suppress and requested an evidentiary hearing and oral argument. The trial court held an evidentiary hearing on the motion to suppress on September 24, 2008. The State presented the arresting officer, Officer Newton, as its only witness.

¶ 4 Officer Newton testified that he and his partner, Officer Denney, observed Caraveo in a white Saturn pulling onto the sidewalk with the "vehicle completely covering the sidewalk [such that] no pedestrians could pass," which constituted traffic and parking violations. He stated that his partner, Officer Denney, then rolled down his window and called out to Caraveo, "how you doing, man?" Caraveo then approached the patrol car, and Officer Denney exited the vehicle to talk with Caraveo.

¶ 5 The two discussed why Caraveo parked on the sidewalk and if he would mind showing the officers identification. After observing a "slight bulge in [Caraveo's] front waistband," Officer Newton testified that he asked Caraveo "if he wouldn't mind letting [him] pat him down, check him for weapons" and that Caraveo responded, "Sure, man, no problem." Officer Newton further testified that he was clear in requesting consent to

---

1. When reviewing a ruling on a motion to suppress, we consider only the evidence presented at the suppression hearing and view that evidence in the light most favorable to upholding the court's ruling. *State v. May,* 210 Ariz. 452, 454, ¶ 4, 112 P.3d 39, 41 (App.2005).

search and that he did not point his gun at Caraveo or put him in handcuffs prior to requesting such consent.

¶ 6 After Officer Newton's testimony, Caraveo testified on his own behalf. Caraveo denied driving or parking the vehicle; he stated that he left the house to retrieve the beer in the car but that once he saw the police officers, he decided to return to the house without the beer. He testified that once he responded to Officer Denney's greeting, both of the officers got out of their patrol car and quickly "jerked up the front of [his] shirt" and that one officer then started conducting a patdown. He testified that the officers never asked if they could conduct a patdown and that he never consented to one.

¶ 7 After the evidence was presented, Caraveo's counsel argued:

> I think if you look at the facts, more likely than not, my client never consented to the patdown. But that's really not the issue here. The issue is in a consensual encounter without reasonable suspicion that criminal activity is afoot, they can't be conducting a patdown on my client. Case law is very clear.

He contended that "even if [Caraveo] did consent in a consensual encounter, [the officers] can't be conducting a patdown." The State argued that consent to search is a "clear exception to the frisk rule," and that Caraveo expressly consented to the patdown.

¶ 8 After taking the matter under advisement to consider *State v. Johnson,* the court issued its ruling as follows:

> The Court after considering the Motion and Response, and the evidence presented at the evidentiary hearing finds that the contact between the defendant and the police officers was a consensual encounter. Under *State v. Johnson,* 217 Ariz. 58, 170 P.3d 667 (App.2007), the officers were not entitled to conduct the pat down search as there was no articulable suspicion of criminal activity connected to the defendant's actions.

The State timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4032(6) (Supp.2008).

## *Discussion*

¶ 9 We review a trial court's ruling on a motion to suppress for an abuse of discretion if it involves a discretionary issue and *de novo* if it involves pure issues of law or constitutional issues. *State v. Moody,* 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004).

¶ 10 We note as an initial matter that during pendency of this appeal, the United States Supreme Court overruled the case from this court, *State v. Johnson,* relied upon by the trial court. *Arizona v. Johnson,* —— U.S. ——, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). In order to properly address the issue presented to us, we must address each of these decisions.

¶ 11 In *State v. Johnson,* three officers pulled over a vehicle after checking the license plate and finding that the vehicle had a mandatory insurance suspension. *Id.* at 59, ¶¶ 2–3, 170 P.3d at 668. The vehicle contained multiple occupants, one of whom, Johnson, was dressed entirely in blue with a blue bandanna, which Officer Trevizo recognized as one indicator of gang affiliation. *Id.* at 60, ¶ 5, 170 P.3d at 669. Hoping to gather gang intelligence, Officer Trevizo started a conversation with Johnson, whom she noticed was carrying a scanner in his jacket. *Id.* at ¶¶ 5–8. Once Johnson left the vehicle, Officer Trevizo patted him down for officer safety. *Id.* at ¶ 9. Based on the evidence obtained from the patdown, Johnson was charged with possession of a weapon by a prohibited possessor and possession of marijuana. *Id.* at ¶ 10.

¶ 12 Johnson argued that the frisk was unconstitutional because his encounter with the officer was consensual and unrelated to the traffic stop. *Id.* at 61, ¶ 12, 170 P.3d at 670. Relying on *In re Ilono H.,* 210 Ariz. 473, 476, ¶ 11, 113 P.3d 696, 699 (App.2005), the panel in *Johnson* stated that "[a]n officer may not, however, conduct a pat-down search during a consensual encounter if the officer lacks reasonable suspicion that criminal activity is occurring, even if the officer has reason to believe a suspect may be armed and dangerous." *Id.* The court thus held that "when an officer initiates an investigative encounter with a passenger that was

consensual and wholly unconnected to the original purposes of the routine traffic stop of the driver, that officer may not conduct a *Terry* frisk of the passenger without reasonable cause to believe 'criminal activity may be afoot.'" *Id.* at 65, ¶ 29, 170 P.3d at 674. Express consent to the patdown itself, as contrasted with consent to the encounter generally, was never raised and was not at issue.

¶ 13 As noted, the United State Supreme Court subsequently reversed this decision. *Arizona v. Johnson,* —— U.S. ——, 129 S.Ct. 781, 172 L.Ed.2d 694. The Court held:

> [I]n a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. *The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity.* To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

*Id.* at ——, 129 S.Ct. at 784 (emphasis added). The Court found that the encounter between Officer Trevizo and Johnson was not consensual, as nothing had occurred that "would have conveyed to Johnson that, prior to the frisk, the traffic stop had ended or that he was otherwise free 'to depart without police permission.'" *Id.* at ——, 129 S.Ct. at 788 (quoting *Brendlin v. California,* 551 U.S. 249, 257, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)). The Court emphasized: "An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* Like the court of appeals in *State v. Johnson,* the Court did not ad-

dress the separate issue of express consent to a patdown.

¶ 14 It is this issue that was not addressed in either *State v. Johnson* or *Arizona v. Johnson* that is presented here: whether the trial court erred by finding Caraveo's consent to the patdown search irrelevant to whether it was constitutional.[2] The State argues that consent is an exception to the requirements of a warrant and probable cause. We agree with the State.

¶ 15 Citing *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), and *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the State argues that if a defendant voluntarily consents to a search, the search must be upheld as constitutional. The United States Supreme Court recognized in *Florida v. Bostick* that "the Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." 501 U.S. at 431, 111 S.Ct. 2382. Once an officer obtains consent to search, the officer need not obtain a warrant to conduct the search or ensure that there is probable cause for the search. *See Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041 (recognizing that one of the "well settled" and "specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"). The Court clarified in *Schneckloth* that the State need only prove that the defendant's consent to the search was freely and voluntarily given. *Id.* at 222, 93 S.Ct. 2041.

¶ 16 The State also cites *State v. Flores* as an example of when we have upheld a consensual search. 195 Ariz. 199, 986 P.2d 232 (App.1999). In *Flores,* an Arizona Department of Safety officer initiated a traffic stop after seeing a Chevrolet Blazer cross into the

---

**2.** The State does not contend that the trial court erred in determining the encounter was a consensual one rather than a *Terry* stop. Nor does the State contend that Officer Newton was entitled to pat down Caraveo because of valid officer safety concerns regardless of whether the en-

counter was a *Terry* stop or consensual. Accordingly, we neither address those issues nor preclude the trial court from doing so on remand. We only address the viability of the consent exception as applied to a patdown.

emergency lane three times. 195 Ariz. at 201, ¶ 2, 986 P.2d at 234. After reviewing the vehicle's registration, the officer issued a warning ticket and told the occupants that they were free to leave. *Id.* at ¶¶ 2–4. The officer then asked if there were any guns or drugs in the truck and if the driver "would mind if the vehicle were searched." *Id.* at ¶ 4. The driver responded that he did not mind a search and signed a DPS-issued consent-to-search form. *Id.* at 201–02, ¶ 4, 986 P.2d at 234–35. A subsequent search uncovered 125 pounds of marijuana. *Id.* at 202, ¶ 8, 986 P.2d at 235. We upheld the search as valid after finding that the driver freely and intelligently consented to the search. *Id.* at 204–05, ¶¶ 18–19, 986 P.2d at 237–38.

■ ¶ 17 Based on these authorities, we agree with the State that when a defendant consents to a search, the officer need not have reasonable articulable suspicion that criminality is afoot or reasonable suspicion that the person is armed and dangerous. Regardless of whether the initial encounter was consensual or based on a valid *Terry* stop, officers may conduct a search when the suspect consents to the search.

¶ 18 We reject Caraveo's argument that the encounter with the police officers was consensual from the outset and that, therefore, the patdown was illegal. He cites *In re Ilono H.* for the proposition that an officer may not conduct a patdown search "as part of a mere consensual encounter." 210 Ariz. at 477, ¶ 11, 113 P.3d at 700. While this proposition is correct, it is subject to important limitations.

¶ 19 In *Ilono,* Office Pegnato and another police officer approached a group of five individuals who were sitting underneath a ramada "marked with gang graffiti" in a park. *Id.* at 474, ¶ 2, 113 P.3d at 697. Upon seeing Ilono's baggy clothing and before asking Ilono "a single question," Officer Pegnato conducted a frisk. *Id.* at 474, 476, ¶¶ 2, 9, 113 P.3d at 697, 699. The frisk revealed that Ilono had a bottle of beer under his clothes, and Officer Pegnato subsequently arrested him for possessing alcohol. *Id.* at 474, ¶ 2, 113 P.3d at 697.

¶ 20 Ilono argued that both the initial stop and the patdown were unconstitutional under *Terry* because Officer Pegnato was "unable to articulate a reason for believing that he had been involved in criminal activity or that he had been armed." *Id.* at ¶ 3. The court found that the State had failed to present any evidence that Ilono had committed or was about to commit a crime and thus the stop of Ilono was unlawful. *Id.* at 475, ¶ 6, 113 P.3d at 698. The panel in *Ilono* further concluded that "the officers were not entitled to conduct a protective search of [Ilono] in the absence of any reason to believe that he had committed, or was committing, a crime." *Id.* at 476, ¶ 11, 113 P.3d at 699. We explained:

> Notably, *Terry* and its Supreme Court progeny addressed the propriety of a patdown search exclusively in the context of a lawful investigatory stop. We do not read those cases to authorize a pat-down search as part of a mere consensual encounter— even when an officer may have grounds to believe the targets of the encounter are potentially armed and dangerous.

*Id.* at 476–77, ¶ 11, 113 P.3d at 699 (footnote and citations omitted).

■ ¶ 21 Caraveo concludes from this passage that "police do not have a legal basis for conducting a frisk during a consensual encounter." Insofar as Caraveo contends that *Ilono* stands for the proposition that a consensual encounter does not, standing alone, provide a legal basis for a patdown, we completely agree with both the interpretation of *Ilono* and the legal proposition itself. However, Caraveo's broadened application of *Ilono* is either not at issue as to the matter before us or, as applied here, is simply incorrect. First, as to the portion of *Ilono* that is not at issue here, the State does not contend that the officers were entitled to pat down Caraveo because they feared for their safety. Thus, we need not decide whether we agree with the portion of *Ilono,* 210 Ariz. at 477, ¶¶ 12–14, 113 P.3d at 700, that indicates that an officer who reasonably fears for his or her safety during a consensual encounter is necessarily prohibited from conducting a lawful patdown. *Contra United States v. Orman,* 486 F.3d 1170, 1176–77 (9th Cir.2007) (upholding a patdown

"for officer safety purposes" in the context of a consensual encounter, finding that the officer's "reasonable suspicion that [the suspect] was carrying a gun ... is all that is required for a protective search under *Terry* ").

¶ 22 Second, as to the portion of *Ilono* that Caraveo inaccurately applies, we note that *Ilono* does not address the situation we have here; namely, one in which the State contends consent to the patdown itself was expressly sought and obtained. The facts in *Ilono* indicate that Officer Pegnato did not even speak to Ilono prior to the frisk. *Id.* at 476, ¶ 9, 113 P.3d at 699. Therefore, *Ilono* does not stand for the proposition that officers may not frisk an individual who voluntarily consents to a frisk.

¶ 23 To conclude, the trial judge misapplied the law when she failed to address the State's argument that there was consent to the patdown of Caraveo. Consent is a recognized exception that permits a search in the absence of a warrant. *Supra* ¶¶ 15–16. Caraveo also asks us to conclude that the State did not meet its burden to prove that Caraveo consented to the search because the trial court did not make a finding on the issue of consent in its ruling. When, as here, the trial court applied an improper standard, it is proper to remand the issue to the trial court rather than deciding the issue in the first instance on the record before us. *See State v. Branham,* 191 Ariz. 94, 98, 952 P.2d 332, 336 (App.1997) (finding the "trial court's basis for denying the motion to suppress was incorrect" and remanding the case for reconsideration). On remand, the trial court must determine whether consent to the patdown was given.

### Conclusion

¶ 24 For the foregoing reasons, we reverse the trial court's orders granting Caraveo's motion to suppress the evidence found during his encounter with the police officers and remand to the trial court for proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge, and JON W. THOMPSON, Judge.