ESPINOSA, Judge, dissenting:
¶ 58 My colleagues today fashion a new and broad incursion into the doctrine of probable cause that is neither necessary to decide this case, nor warranted by its facts. In doing so, they engage in some innovative reasoning to dispense with applicable precedent, discount persuasive guidance from other states with identical or similar medical marijuana laws, and, in my view, depart from good precepts of wise jurisprudence. Because such judicial engineering is not necessary here, imposes an undue burden on law enforcement and public safety, and is unsupported by the record before us, I must respectfully dissent.
¶ 59 At the outset, it is telling that my colleagues attempt to portray their holding as “a limited one,” but that is a latent mischaracterization in light of the actual facts of this case, which involve far more than the mere “scent of marijuana.” In a wide-ranging discourse, the majority nevertheless repeats the phrase, “mere scent of marijuana,” or some variation of it, approximately twenty-five times. That mantra, upon which much of the majority analysis relies, has no basis here. My colleagues also refer to “dwelling[s],” “residence[s],” and “large categories of innocent people” — additional factors not pertinent to the issue before us. Such a scenario might exist if this matter involved police officers strolling down a residential street and catching a whiff of burnt[14] marijuana emanating from a home. But that is simply not this case. Thus my colleagues’ foreboding suggestions that police could “invade homes” of “numerous ... citizens” based on “simply being in the presence or vicinity of medical marijuana odors,” and “SWAT teams ... [entering] the dwellings of people suffering from debilitating medical conditions such as cancer or Alzheimer’s disease,” only serve to raise alarmist fears not relevant here.[15]
¶ 60 What should instead be undertaken is a straightforward application of existing law to straightforward facts. Tucson police were called by a South Tucson patrol officer after he smelled a “strong odor” of “fresh marijuana” that appeared to be emanating from a row of four storage units in South Tucson. The smell was “overpowering,” even inside a vehicle on the street more than sixty or *247 seventy feet away. There was no indication that the buildings were anything other than commercial storage units. My colleagues, however, construe this as a situation that “fits any number” of other scenarios in which individuals are not engaged in criminal activity. Indeed, they characterize maintaining a large warehouse full of marijuana plants and baled marijuana as an “entirely ordinary activity.” The majority also effectively insists that the officers who sought the search warrant were required to disprove a negative before the warrant could properly issue: that the premises and property owner, who could not be located at the time, did not fall under the protection of the AMMA. My colleagues unrealistically suggest this would be an easy task,[16] while ignoring that there should first be some reason to do so, other than an exceedingly slim chance that the compelling scenario faced here would be so protected. But proof of such a negative is not a requirement for probable cause. See Gates, 462 U.S. at 238, 103 S.Ct. 2317 (only “fair probability” of criminal activity required); cf. Evans, 237 Ariz. 231, ¶ 13, 349 P.3d at 209 (reasonableness standard does not demand officers rule out possible alternative, innocent explanations for actions observed before effecting investigative stop).
¶ 61 My colleagues, while paying lip-service to the concept, lose sight of the fact that probable cause is a fluid and practical concept, and a magistrate’s finding of such will be upheld when it has a substantial basis. See Hyde, 186 Ariz. at 272, 921 P.2d at 675. “When assessing whether probable cause exists, *we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ ” Dixon, 153 Ariz. at 153, 735 P.2d at 763, quoting Brinegar, 338 U.S. at 175, 69 S.Ct. 1302. Probable cause is determined from the totality of the circumstances, and the information upon which it is based may be “viewed in light of the police officers’ knowledge and past experience.” Million, 120 Ariz. at 15, 583 P.2d at 902.
¶ 62 The majority goes on to propose, and indeed would require, an “odor-plus” standard, while ignoring that that is precisely what the issuing judge here was presented with. The suiTounding circumstances are all-important and should not be brushed aside, yet it is not until page fifteen of a twenty-nine page decision that my colleagues acknowledge the “contextual facts,” albeit discounting them out of hand. But it is not a “mere scent” situation when officers are confronted by an “overpowering odor” of “fresh marijuana,” emanating from commercial storage units and detectable even inside a vehicle on the street, some sixty to seventy feet away.
¶ 63 To rationalize reversal of the trial court’s decision, my colleagues, after implicitly conceding that residential concerns do not actually apply, go beyond the factual record and arguments of the parties on appeal to posit that the storage facility here conceivably could have been an authorized marijuana dispensary. But that is a highly unlikely scenario not raised by Sisco or the state before this court, and no such evidence was introduced below.[17] Notwithstanding, after *248 acknowledging that registered dispensary locations are confidential, the majority suggests that police might nevertheless identify an illegal cultivation site by signs of noncompliance with regulatory requirements, such as a lack of restricted access, lack of video surveillance and alarm systems, lack of exterior lighting, or violation of zoning requirements. But that was exactly the situation the officers encountered here. Indeed, the search warrant affidavit noted nearby residences, whereas cultivation sites must be in commercial or industrial districts,[18] and testimony at the hearing indicated that the building had none of the external hallmarks of a regulated cultivation site, that is, restricted access and sufficient exterior lighting, and the officers made no mention of video surveillance cameras on the building, as would be the case for an authorized cultivation site. It is notable that as of December 2012, there was only one operating dispensary in Tucson,[19] and that the storage facility here was located in a known high crime area, as pointed out by co-defense counsel at the hearing. Given this context, it is difficult to imagine that the trial court nevertheless abused its discretion in concluding that the overpowering odor of fresh marijuana, detected sixty to seventy feet away from several commercial storage units that did not exhibit any indicia of a dispensary cultivation site, indicated “a fair probability” of criminal activity. See Gates, 462 U.S. at 238,103 S.Ct. 2317.
¶ 64 My colleagues complain, however, that the lack of external factors that might indicate an authorized storage or cultivation site was not reported to the issuing magistrate. But law enforcement officers cannot be expected to be “legal technicians,” Dixon, 153 Ariz. at 153, 735 P.2d at 763, versed in the detailed regulatory requirements for authorized dispensaries, particularly in early 2013 when there was only one such facility in the entire city. More importantly, there was no reason for the officers to report what they did not see; to hold otherwise is to require police to imagine and negate every possibility of innocent conduct, something that has never been required in assessing probable cause. See Crowley, 202 Ariz. 80, ¶26, 41 P.3d at 627 (“probable cause to issue [search] warrant not negated by fact there may be innocent explanation consistent with facts alleged in warrant request”), citing United States v. Burke, 718 F.Supp. 1130, 1136 (S.D.N.Y. 1989); Ramirez v. City of Buena Park, 560 F.3d 1012, 1024 (9th Cir.2009) (under totality-of-circumstances test, while police may not disregard facts tending to dissipate probable cause, “ ‘law enforcement officers do not have to rule out the possibility of innocent behavior.’ ”), quoting United States v. Thomas, 863 F.2d 622, 627 (9th Cir.1988). Finally, even viewing this as a close question, our supreme court has instructed that such “should be resolved by giving preference to the validity of warrants.” Hyde, 186 Ariz. at 272, 921 P.2d at 675.
¶ 65 My colleagues also rely on Arizona’s relatively new medical marijuana act, but readily dispense with relevant precedent from states with marijuana laws similar to Arizona’s. Unlike the three states, Alaska, Massachusetts, and Oregon, whose caselaw the majority cites with approval, in Arizona, the use and possession of marijuana remains a crime. See §§ 13-3405, 36-2802(E); Reedr-Kaliher, 237 Ariz. 119, ¶ 7, 347 P.3d at 139. And, under the AMMA, even qualified patients and caregivers are subject to prosecution under § 13-3405, if they possess more than the permitted amount of marijuana. See A.R.S. § 36-2811(A) (presumption of medical use if amount of marijuana possessed does not exceed that allowable under Act). This court has stated, in the analogous context of a grand jury probable cause proceeding, that: “In claiming protection under th[e] statutory immunity [of the AMMA], it is a *249 defendant’s burden to ‘plead and prove,’ by a preponderance of the evidence, that his or her actions fall within the range of immune action.” Fields, 232 Ariz. 265, ¶ 15, 304 P.3d at 1092 (evaluating grand jury instructions in light of AMMA), quoting Fid. Sec. Life Ins. Co. v. Ariz. Dep’t of Ins., 191 Ariz. 222, ¶9, 954 P.2d 580, 583 (1998).
¶ 66 Arizona is far more similar to states that maintain criminal prohibitions against marijuana but allow for registration and exemption from prosecution pursuant to a narrowly tailored medical marijuana act. See Brown, 825 N.W.2d at 94 (Michigan’s medical marijuana act “does not abrogate state criminal prohibitions related to marijuana,” it rather “constitutes a ‘very limited, highly restricted exception to the statutory proscription against the manufacture and use of marijuana.’”), quoting People v. King, 291 MichApp. 503, 804 N.W.2d 911, 915 (2011); Senna, 79 A.3d at 49 (“Vermont’s ‘medical marijuana’ law does not purport to decriminalize the possession of marijuana; it merely exempts from prosecution a small number of individuals who comply with rigid requirements for possession or cultivation. In that sense, the law creates a defense to prosecution.”) (citation omitted); see also State v. Ellis, 178 WashApp. 801, 327 P.3d 1247,1250 (2014) (Washington’s medical marijuana act “created a potential medical use exception to ... general rule criminalizing marijuana manufacturing”).
¶ 67 In such states, courts have concluded that probable cause does not require officers to provide facts showing the state’s medical marijuana exception to be inapplicable. See Brown, 825 N.W.2d at 95 (because possession and manufacture of marijuana remains illegal under Michigan law, “to establish probable cause, a search-warrant affidavit need not provide facts from which a magistrate could conclude that a suspect’s marijuana-related activities are specifically not legal under the MMMA”); see also Ellis, 327 P.3d at 1250 (“medical use affirmative defense did not vitiate probable cause supporting a search warrant”; “affidavit need not ... show [medical marijuana act] exception’s inapplicability”); c.f. Clark, 178 Cal.Rptr.3d at 656 (California’s medical marijuana act provides a defense to prosecution and therefore “cannot be interpreted to impose an affirmative duty on law enforcement officers to investigate a suspect’s status as a qualified patient or primary caregiver under the Act prior to seeking a search warrant.”).
¶ 68 Thus, because marijuana remains illegal in Arizona and the AMMA provides only a narrow exception to arrest and prosecution,[20] I disagree with my colleagues that the Act has altered the nature of evidence required to support issuance of a search warrant. More importantly, this case does not present a situation in which we need reach any conclusion about the AMMA and probable-cause requirements, as the majority’s own “odor-plus” test is well satisfied on the facts before us.
¶ 69 Finally, even assuming arguendo that the warrant here somehow fell short of establishing probable cause, the good-faith exception to the exclusionary rule would unquestionably apply. My colleagues avoid this principle on the ground the state “abandoned that argument” by not raising it on appeal,[21] *250 and “we would risk appearing asymmetrical in our treatment of the parties.” But at oral argument, the state urged that this court had an obligation to address the good-faith doctrine, citing applicable caselaw. And, contrary to the majority’s implication that the state thereby sought some tactical advantage, it explained it had not advanced the issue in its answering brief only because it had believed the search warrant at issue was “solid.”
¶ 70 Most importantly, what the majority casts as unfair asymmetry is the well-established rule that the trial court’s decision should be upheld on any valid legal ground supported by the record. See Canez, 202 Ariz. 133, ¶ 51, 42 P.3d at 582 (although certain issues deemed abandoned by state for lack of authority or argument, “we are obliged to uphold the trial court’s ruling if legally correct for any reason”) (emphasis added); Boteo-Flores, 230 Ariz. 551, ¶ 8, 288 P.3d at 113 (appellate court “required” to affirm trial court’s ruling for any legally correct reason); State v. Kinney, 225 Ariz. 550, n. 2, 241 P.3d 914, 918 n. 2 (App.2010) (court of appeals will address waived issue when upholding trial court’s ruling). It is notable that my colleagues decline to apply this principle, while citing facts outside the record and arguments not briefed on appeal to reverse the trial court. Cf. Boteo-Flores, 230 Ariz. 551, ¶ 9, 288 P.3d at 113-14 (while appropriate for appellate court to consider waived argument when presented to uphold trial court’s ruling, not so when argument attacks ruling). My colleagues justify their position by asserting “we do not customarily [uphold trial courts] on grounds neither raised nor briefed on appeal.” But, as borne out by our precedents, that is exactly what justice requires when the law and the facts clearly support a court’s ruling, as is the ease here. See Canez, 202 Ariz. 133, ¶ 51, 42 P.3d at 582; State v. Lopez, 217 Ariz. 433, n. 4,175 P.3d 682, 687 n. 4 (App.2008) (addressing argument waived for being raised only in reply brief); Mitchell v. Gamble, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 950 (App.2004) (considering argument raised for first time at oral argument); Barlage v. Valentine, 210 Ariz. 270, n. 7, 110 P.3d 371, 377 n. 7 (App.2005) (same); see also Decola v. Freyer, 198 Ariz. 28, ¶ 8, 6 P.3d 333, 336 (App.2000) (“where the parties have failed to address completely the correct rule of law governing the issues, we are not precluded from doing so”).
¶ 71 The exclusionary rule is triggered when police misconduct is “sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); see also Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (suppression of evidence remedy of “last resort” because of “ ‘substantial social costs’ ”), quoting United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under the good-faith exception, the exclusionary rule does not bar evidence seized in reasonable, good-faith reliance on a search warrant that is later found defective for lack of probable cause. See Leon, 468 U.S. at 920-21, 104 S.Ct. 3405. To qualify for the exception, the officers’ reliance on the warrant must be “objectively reasonable.” Id. at 922, 104 S.Ct. 3405; see also AR.S. § 13-3925(C) (codifying good-faith exception). Determining whether that standard is met turns on “whether a reasonably well trained officer would have known that the search was illegal despite the magistrate’s authorization.” Leon, 468 U.S. at 922 n. 23, 104 S.Ct. 3405. As a result, the exclusionary rule “remains an appropriate remedy if’: (1) a warrant is issued based on a deliberately or recklessly false affidavit; (2) a judicial officer fails to act in a neutral manner in issuing a warrant; (3) a warrant is based on an affidavit “ ‘so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable’ ”; or (4) a warrant is so facially deficient that no officer could believe it to be valid. See id. at 922-23, 104 S.Ct. 3405, quoting Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
*251 ¶ 72 When questioned about the good-faith exception at oral argument before this court, Sisco did not contend there was evidence the judge issuing the warrant was misled by false information,[22] that she abandoned her judicial role, or that the warrant was “so facially deficient ... that the executing officers [could not] reasonably presume it to be valid.” Id. at 923, 104 S.Ct. 3405. Father, he asserted the affidavit lacked any indicia of probable cause. The threshold for establishing this contention “is a high one.” Messerschmidt v. Millender, — U.S. -, -, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012). Officers are not required to make a “deep inquiry” into the reasonableness of a warrant, and “[i]n the ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination.” Leon, 468 U.S. at 921-22, 104 S.Ct. 3430, quoting Gates, 462 U.S. at 267, 103 S.Ct. 2317; see also Malley v. Briggs, 475 U.S. 335, 346 n. 9, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (sound presumption magistrate more qualified than police officer to make probable cause determination, “and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable”).
¶ 73 Here, it was not unreasonable for the officers to rely upon a search warrant based on the “overpowering” smell of “fresh” marijuana detectable at a significant distance from a commercial storage unit. Notably, both before and after the issuance of the warrant in this case, this court has held that the odor of marijuana provides probable cause for a search. See State v. Decker, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978) (odor of burned marijuana afforded probable cause to believe hotel room contained marijuana); Baggett, 232 Ariz. 424, ¶ 20, 306 P.3d at 85 (when officers smelled marijuana they had probable cause to believe backpack contained contraband and “had a lawful right to search”). Here, there was more than mere scent alone, meeting the “odor-plus” standard referred to by my colleagues. And that the duly issued warrant did not include a litany of facts disproving the unlikely possibility the storage unit was a registered medical marijuana dispensary or cultivation site did not make the officers’ reliance upon the warrant “ ‘entirely unreasonable,’ ” Leon, 468 U.S. at 901, 923, 104 S.Ct. 3430, quoting Brown, 422 U.S. at 610-11, 95 S.Ct. 2254, requiring the remedy of “last resort,” Hudson, 547 U.S. at 591, 126 S.Ct. 2159. Thus, the good-faith execution of the warrant obviates the necessity of deciding this case on other, broader grounds and reversing the trial court by way of new, unprecedented interpretations of the AMMA and Fourth Amendment requirements.[23] See Lyng v. Nw. Indian Cemetery Protective Ass’n, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (“fundamental and longstanding principle of judicial restraint requires that courts *252 avoid reaching constitutional questions in advance of the necessity of deciding them”); cf. Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm’n, 160 Ariz. 350, 354, 773 P.2d 455, 459 (1989) (“jurisprudential considerations require us to decide the case on the narrowest grounds possible”).
¶ 74 In sum, because under the facts and circumstances of this case any reasonable person would conclude there was a “fail-probability that contraband or evidence of a crime w[ould] be found” in the storage unit, Gates, 462 U.S. at 238, 103 S.Ct. 2317, and because the investigating officers executed the search in good-faith reliance on a neutral magistrate’s warrant, see Leon, 468 U.S. at 920, 104 S.Ct. 3405, it is unnecessary to interpret Arizona’s Medical Marijuana Act, apply out-of-state precedents from jurisdictions in which marijuana has been decriminalized, and burden law enforcement and public safety with a broad new probable cause requirement not invoked by the situation they faced here. Accordingly, I respectfully dissent and would affirm the trial court’s denial of the motion to suppress.

. My colleagues gloss over distinctions between the smell of fresh and burnt marijuana. But, setting aside the topic of dispensaries for the moment, which was not raised on appeal, the probability that any amount of growing or recently harvested marijuana would be lawful is almost nonexistent. The AMMA restricts qualified patients from cultivating any plants at all if they reside within twenty-five miles of a dispensary, A.R.S. § 36 — 2804.02(A)(3)(f), and limits these patients to 2.5 ounces of the dried flowers of the plant, A.R.S. § 36-2801 (l)(a)(i), (15). Currently 97.2 percent of Arizonans live within twenty-five miles of an operating dispensary, with the remainder living in rural areas. AMMA End of Year Report, app. C (2014). Thus, while there may be "hundreds of Arizonans” who can lawfully cultivate, they cannot do so if they reside in Tucson. My colleagues, however, label this a "faulty premise” because a qualified patient with a "debilitating medical conditionf] such as cancer or Alzheimer’s disease” living in a remote part of the state could opt to cultivate her twelve marijuana plants in a residential area of South Tucson. That imaginative scenario appears absurd and certainly not relevant to police and judicial officers in the context of probable cause. But even if she did, common sense dictates twelve plants would not produce the "overpowering” odor of 357 plants and fifty-three pounds of cultivated marijuana.

. In fact, such situations are nearly inconceivable given the strictures of the AMMA. As already noted, nearly all qualified patients and caregivers are limited to 2.5 ounces of dried marijuana flowers. It is highly implausible that the odor of such a relatively tiny quantity of marijuana would be detectable in the street by passing officers. Indeed, Sisco’s expert on “the senses of taste and smell” testified that the "marijuana-like smell” is produced by mature, budding plants, and opined that you could have a lot of plants "in a pretty tight building” and "not have much odor on the outside” depending on the plants’ budding stages.

. As the state noted at oral argument, and not denied by the majority, law enforcement officers are generally unable to access information about registered cardholders. See § 36 — 2810(A)(3). My colleagues assert that "police can easily develop facts about places where marijuana is being grown or stored that suggest the activity there is criminal, whether from their own observations, consensual encounters, or information supplied by informants.” But the trial court accurately observed that in the case of "stash houses,” marijuana may be moved quickly, for example, "within two hours.” Furthermore, the AMMA requires that qualified patients and caregivers carry identification cards which they must produce "to enjoy a presumption of legal use.” The Act does not express or imply any intent to impose greater burdens on officers investigating marijuana-related crimes and thereby dimmish public safety.

. My colleagues acknowledge this issue was not raised on appeal but assert "the law concerning dispensaries” was "utilized to justify the trial court’s ruling below." The record reflects, however, that neither party cited any cases, statutes, or regulations on this topic, nor was any evidence adduced at the hearing that the storage unit exhibited any signs of being an authorized dispensary. The court merely opined that had the warehouse been a dispensary, "that would absolutely be a defense to the crime, and, presumably, the County Attorney’s office wouldn’t have even issued [the] case.”

. See City of Tucson Fact Sheet, Medical Marijuana Dispensaries and Cultivation Locations, available at http://www.tucsonaz.gov/files/pdsd/ forms/Medical_Marijuana_Fact_Sheet.pdf. Puzzlingly, the majority disagrees that the presence of nearby homes suggests an illegal location for a marijuana storage facility, positing that it is just as likely the homes were illegally sited. This well illustrates merely another example of rationalizing away, with far-fetched scenarios, salient contextual factors the magistrate could properly consider in assessing probable cause.

. See Will Humble, Dispensary Zoning Case, Ariz. Dep’t of Health Servs. Dir.’s Blog (Dec. 13, 2012), http://directorsblog.health.azdhs.gov.

. My colleagues analogize to prescription-only drugs and imply that to find probable cause here would mean "everyone taking a prescription medication [would be] a suspected criminal who is subject to a home search and arrest[.]" But that Orwellian scenario has no traction under the facts at hand. A true analogy would require similar "circumstances of the possession,” i.e., a storage unit filled with enough prescription drugs to be detectable by a powerful odor in the street. If, for example, fifty-three pounds and the equivalent of 357 plants (the amount of marijuana found here) of Oxycontin produced a distinctive, "overpowering” odor flowing from a nondescript storage unit in South Tucson, and given the well-known abuse and black market for such drugs, the same probable cause for a search would arise as here.

. The good-faith exception was clearly raised below by the state in its response to Sisco's motion to suppress, and both sides were aware of the argument when developing the record. After taking evidence and hearing the state's fully cross-examined witnesses, the trial court did not reach the good-faith argument because it upheld the issuing judge's finding of probable cause. Thus, there was no reason for the state "to secure a ruling” on this issue. My colleagues nevertheless decline to reach it because Sisco has not had "the opportunity to respond.” But he in fact had every opportunity to do so below, as well as before this court after the topic was *250 broached during the state’s argument; there is no reason to now skirt the issue when the record is well developed and sufficient.

. Sisco has not asserted that either warrant was issued on the basis of false or reckless statements. He did, in a different context, claim the officers "recklessly with[e]ld[ ] information about wind conditions when calling for the first warrant.” But that allegation, if relevant at all, only went to identifying which unit was the likely source of the marijuana. And our supreme court has "decline[d] to interpret the first Leon exception to include an affirmative duty for police officers to volunteer information that a magistrate does not request." Hyde, 186 Ariz. at 274, 921 P.2d at 677 (good-faith exception not affected by claim detective was "not candid” for failing to volunteer information to commissioner, "even if she did not inquire,” because no evidence detective provided false information).

. Given the uncontested facts, it is unclear what "factual questions” and "credibility” determinations the majority believes would need to be resolved, but if that were actually the case, we should remand to allow the trial court to make such findings and decide the question of good faith. See State v. Caraveo, 222 Ariz. 228, ¶¶ 8, 23, 213 P.3d 377, 379, 382 (App.2009) (remanding for determination whether search permissible based on different legal argument made below but not addressed by trial court); State v. Branham, 191 Ariz. 94, 98, 952 P.2d 332, 336 (App. 1997) (remanding for reconsideration where "trial court’s basis for denying the motion to suppress was incorrect” and it had not ruled on question whether consent justified search). “Remand ... is proper when the trial court is found to have based its ruling on an improper standard.” State v. Herrera, 232 Ariz. 536, ¶¶ 13-14, 307 P.3d 103, 110 (App.2013) (limited remand appropriate to permit trial court to consider evidentiary issue and allow this court to determine on review whether ruling was legally correct), citing Boteo-Flores, 230 Ariz. 551, ¶ 7, 288 P.3d at 113.