NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ISMAEL RAMOS, *Appellant.*

No. 1 CA-CR 16-0261
FILED 1-26-2017

Appeal from the Superior Court in Mohave County
No. S8015CR201401412
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

¶1          Ismael Ramos ("Appellant") appeals his conviction for money laundering in the second degree.  Appellant argues that the driver of the vehicle in which Appellant was a passenger lacked the authority to give police consent to search all contents of the vehicle, and fundamental error occurred when the trial court failed to *sua sponte* preclude evidence discovered pursuant to that search; namely, Appellant's duffel bag containing approximately $12,000 in currency.  Finding no error, much less fundamental error, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2          On October 20, 2014, Sergeant Karim of the Mohave County Sheriff's Office was on patrol on Interstate 40 when he observed a black Chrysler 200 traveling westbound and following another vehicle at an unreasonably close distance.  Sergeant Karim activated his overhead lights, and the Chrysler 200 began to pull over, but suddenly pulled back out onto the road and continued driving, passing the vehicle it had been following.  Sergeant Karim activated his vehicle's siren, and the Chrysler 200 veered onto the shoulder of the road, where it continued to travel for another one-half mile before eventually stopping.  During that time, Sergeant Karim observed what appeared to be small pieces of tissue paper being thrown out of the passenger side of the vehicle.

¶3          Sergeant Karim parked approximately fifteen to twenty feet behind the Chrysler 200, and as he approached, he smelled the odor of burnt marijuana emanating from it.  He asked the driver, Donte Hardaway, to gather his "paperwork"—including his driver's license, registration, and insurance—and to come back to the patrol car to speak with him.

¶4          When questioned about where he and his companions were going, Donte stated that he, his brother (Dwight Hardaway, who was sitting in the front passenger seat), and Appellant (who was sitting in the rear seat) were traveling from San Antonio to Las Vegas for a wedding. They had passed the turnoff for Las Vegas, however, and when questioned further, Donte did not know whose wedding he was attending or where the wedding was being held, and although he initially stated he planned to stay with friends while in Las Vegas, he later stated he planned to stay at a hotel,

---

[1]     We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

but did not know the name of the hotel. Additionally, although he claimed the group had stopped in New Mexico to sleep the night before, Donte could not recall the name of the friend with whom they had stayed.

¶5        Included in Donte's paperwork was a one-week car rental agreement, which indicated the Chrysler 200 had been rented by a third party not present in the car. Sergeant Karim decided to check the vehicle identification number ("VIN") on the vehicle to ensure it matched the VIN on the paperwork. As he approached the Chrysler 200 to check its VIN, the sergeant again noticed the odor of burnt marijuana emanating from the vehicle. While checking the VIN, he spoke with Dwight, who stated the group had driven straight through and had not stopped in New Mexico.

¶6        Sergeant Karim then requested and received Donte's consent to search the vehicle. Before he began the search, Sergeant Karim ordered Dwight and Appellant to get out and stand with Donte near his patrol car, where they were watched by Deputy Apfel, who had arrived on the scene. Neither Dwight nor Appellant objected to the search, either when Donte gave consent or at any time thereafter.

¶7        During the search, Sergeant Karim discovered three bags in the trunk, each containing similarly folded and banded currency. He placed Donte, Dwight, and Appellant in handcuffs, advised them of their rights,[2] and requested and received permission to speak with each of them.

¶8        In speaking with the detained men, Sergeant Karim learned that each individual bag belonged to one of the vehicle's occupants. Donte's bag and Dwight's bag each contained approximately $11,000, and Appellant's bag contained approximately $12,000. When asked to explain the currency found in their bags, each man stated the money was to "party" in Las Vegas. Donte further explained he earned money by working at McDonald's, Dwight stated he earned approximately $500 per week "under the table" resurfacing kitchen counters, and Appellant stated he was unemployed and had not worked since the previous April, but had been saving money for several years. Both Dwight and Appellant made further statements inconsistent with those previously made by Donte.

¶9        Sergeant Karim called detectives, who arrived and took over the investigation. The investigating officers found no quantifiable drugs or drug paraphernalia in the car; however, Appellant's cell phone contained photographs of marijuana and currency bundled in a way similar to the

_____

[2]        *See Miranda v. Arizona*, 384 U.S. 436 (1966).

currency found in the Chrysler 200, as well as copious text messages from the days, weeks, and months before October 20, 2014, detailing numerous drug sale transactions and discussions indicating that, despite his contention to the contrary, Appellant was a drug dealer traveling to California to purchase marijuana.[3]

**¶10** A grand jury indicted all three men, charging each with one count of money laundering in the second degree, a class 3 felony. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-2317(B)(1) (Supp. 2016).[4] Appellant and his co-defendants were tried together, and the jury found all three defendants guilty as charged. As to Appellant, the trial court suspended sentence and imposed a term of three years' probation.

**¶11** We have jurisdiction over Appellant's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12–120.21(A)(1) (2016), 13–4031 (2010), 13–4033(A) (2010).

## ANALYSIS

**¶12** Appellant argues that, although Donte had common authority to consent to a search of the vehicle, Donte lacked authority over Appellant's personal property within the vehicle; namely, Appellant's duffel bag and its contents. Appellant maintains that, because he did not personally consent to the search of his bag found within the trunk, the search was illegal and any fruits of the search should have been suppressed.

**¶13** The record makes clear, and Appellant concedes, he did not raise this argument before the trial court.[5] Because Appellant did not raise

---

[3] Donte's phone also contained numerous text messages referring to drug transactions. Dwight's phone, which was in his immediate possession during the stop and until it was seized, contained nothing of evidentiary value.

[4] We cite the current version of the statute because no revisions material to our analysis have occurred since the date of the crime.

[5] Appellant's original counsel affirmatively certified to the court that he knew "of no problems concerning the securing of evidence, including statements of confessions of [Appellant], identifications of [Appellant], and results of a search and seizure, electronic surveillance, or arrest, or any other constitutional issues raisable by any of the motions specified[, including a

this argument below, we review only for fundamental error.[6]  To prevail under fundamental error review, Appellant must prove that the trial court erred, the error was fundamental, and the error caused him prejudice.  *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-26, 115 P.3d 601, 607-08 (2005); *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991) (recognizing that before a reviewing court engages in fundamental error review, it must first conclude the trial court committed some error).

**¶14**        The Fourth Amendment guarantees individuals freedom from unreasonable searches and seizures by the government.  U.S. Const. amend. IV; *see also* U.S. Const. amend. XIV, § 1.  Generally, a warrant must be obtained to search an area in which an individual has a reasonable expectation of privacy.  *See State v. Myers*, 117 Ariz. 79, 89, 570 P.2d 1252, 1262 (1977).  Nonetheless, "[a] warrantless search is valid if conducted after

---

motion to suppress evidence based on unlawfulness of a search or seizure]."  Before trial, Appellant obtained new counsel, who requested a voluntariness hearing.  Counsel did not, however, request a suppression hearing related to the vehicle's search or expressly disavow the previous certification of Appellant's original counsel.  At the conclusion of the voluntariness hearing, the trial court found that no law enforcement officer had made any promises or threats to the defendants and that each defendant had received and acknowledged *Miranda* warnings before agreeing to speak with officers.  Appellant's new counsel also joined in a motion to preclude evidence of the text messages taken from Appellant's cell phone, a motion the court also denied.

[6]        Generally, we review a trial court's ruling on a motion to suppress for an abuse of discretion, and consider only the evidence presented at the suppression hearing.  *See State v. Mitchell*, 234 Ariz. 410, 413, ¶ 11, 323 P.3d 69, 72 (App. 2014).  In this case, because Appellant did not move to suppress the contents of the vehicle's trunk or Appellant's duffel bag, no related evidentiary hearing was held.  The State therefore suggests we should decline to review the issue.  *See State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988) ("It is highly undesirable to attempt to resolve issues for the first time on appeal, particularly when the record below was made with no thought in mind of the legal issue to be decided.").  In this case, however, the record was sufficiently developed at trial to allow this court to review for fundamental error.  *See State v. Newell*, 212 Ariz. 389, 398, ¶ 34, 132 P.3d 833, 842 (2006) (stating that, although the failure to assert an argument in the trial court normally precludes appellate review of the claim, this court may review a suppression argument raised for the first time on appeal for fundamental error).

voluntary consent is given." *State v. Paredes*, 167 Ariz. 609, 612, 810 P.2d 607, 610 (App. 1991) (citation omitted). Consent may be given by a third party if that individual has "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

**¶15** The test for determining common authority focuses on apparent rather than actual authority, such that, if it reasonably appears a third party has common authority, the consent to search is generally valid. *See State v. Castaneda*, 150 Ariz. 382, 389, 724 P.2d 1, 8 (1986) (citing *State v. Girdler*, 138 Ariz. 482, 486, 675 P.2d 1301, 1305 (1983)); *see also State v. Flores*, 195 Ariz. 199, 204, ¶¶ 14-15, 986 P.2d 232, 237 (App. 1999) (finding persuasive the "significant number of cases" holding that a driver of a vehicle may consent to its search even if the owner is present, and further recognizing that a driver may consent to the search of a rented vehicle, even where the lessee is a passenger).

**¶16** "Determining the validity of a law enforcement officer's search based on consent generally involves two factors: (1) whether the consent was voluntarily given and (2) whether the search was within the scope of the consent." *State v. Becerra*, 239 Ariz. 90, 92, ¶ 8, 366 P.3d 567, 569 (App. 2016) (citing *Paredes*, 167 Ariz. at 612–13, 810 P.2d at 610–11). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). In the context of vehicle searches, the standard is satisfied when the driver of a vehicle consents to the search of the vehicle, and the authority generally extends to all items found within the car. *See Flores*, 195 Ariz. at 204, ¶ 16, 986 P.2d at 237.

**¶17** On this record, Appellant cannot demonstrate error, much less fundamental, prejudicial error. No dispute exists that Donte had control over the Chrysler 200 and its trunk because he was the driver and had the trunk's key. Thus, Donte had common authority to consent to the vehicle's search, including the trunk and its contents. *See Matlock*, 415 U.S. at 171 & n.7; *Flores*, 195 Ariz. at 204, ¶¶ 14-17, 986 P.2d at 237; *see also United States v. Anderson*, 859 F.2d 1171, 1176-77 (3d Cir. 1988) ("Neither Taylor nor Anderson owned the vehicle; thus, Anderson as the driver had at least common authority over the trunk of the car and could validly consent to the search thereof.").

¶18        Further, the record makes clear that Donte's consent was voluntarily given. Donte did not allege, and Appellant does not argue, that Donte was threatened or coerced in any manner. Nor does Appellant argue that Sergeant Karim's search of the vehicle exceeded the scope of Donte's consent. Donte did not limit his consent in any way, and once Sergeant Karim opened the trunk, no one, including Appellant, objected to the search or attempted to clarify that some of the bags in the trunk did not belong to Donte and argue that he therefore lacked the authority to consent to their search.

¶19        Moreover, the record belies Appellant's claim that he had no opportunity to limit or object to the search. Deputy Apfel testified that, while Sergeant Karim conducted the search, Donte, Dwight, and Appellant stood approximately fifteen to twenty feet away, watched the search, and joked and talked about sports with the deputy, until Sergeant Karim began to search the trunk, at which time the conversation stopped, and the men became very quiet and attentive to the search. Despite the opportunity to do so, at no time did the men voice any objection. Appellant remained silent, did not contest the search, and did not identify any of the bags as his own during the search. Thus, individual ownership of the bags in the trunk was not made apparent to Sergeant Karim, and by virtue of Donte's consent, the sergeant was authorized to search the vehicle and all of the contents contained therein.[7]        Accordingly, there was no basis for

---

[7]        *See, e.g., State v. Walton*, 565 So. 2d 381, 383 (Fla. Dist. Ct. App. 1990) ("If police officers have probable cause to search a car, they can search the entire vehicle, including all of its compartments and containers, and they can open closed containers to investigate their contents. The same scope of search should apply if based on the driver's consent to search the car and its contents, where a different ownership is not apparent or made apparent to the officers conducting the search." (internal citation and footnote omitted)); *see also Anderson*, 859 F.2d at 1177 ("[I]t is uncontroverted that while the car was being searched, Taylor stood by and watched without objection. Such behavior is completely inconsistent with the contention that Taylor retained an expectation of privacy. It was therefore proper for the fruits of the search to be admitted against Taylor."); *but see State v. Bentlage*, 192 Ariz. 117, 118-19, ¶ 6, 961 P.2d 1065, 1066-67 (App. 1998) (concluding that the owner of the stopped vehicle did not have apparent authority to consent to a search of the zippered case found in the car because the officer conducting the search was aware the case belonged to the defendant).

suppression, and the trial court did not err in not precluding evidence obtained from the search of Appellant's duffel bag.[8]

## CONCLUSION

**¶20**      Appellant's conviction and placement on probation are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[8]      Because we affirm on the foregoing grounds, we do not address the State's argument that, regardless of consent, the search was authorized under the automobile exception to the Fourth Amendment's warrant requirement.